### WEBER v. WEBER.

#### Opinion delivered June 22, 1914.

1.  ALIENATION OF AFFECTION—SUFFICIENCY OF EVIDENCE—DAMAGES.—In an action for damages by a wife for the alienation of her husband's affections, the evidence held sufficient to warrant a verdict in favor of the plaintiff, and a verdict of $2,500 held not to be excessive. (Page 474.)

2.  ALIENATION OF AFFECTIONS—RIGHT OF MARRIED WOMAN TO SUE.—A married woman may maintain an action in her own name under Kirby's Digest, § 6017, against a defendant for alienating the affections of her husband. (Page 485.)

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks*, Judge; affirmed.

STATEMENT BY THE COURT.

This suit was instituted to recover damages against appellants, for the alleged alienation of the affections of the appellant's husband, Joe Weber. The appellee married Joe Weber, the only child of appellants, in the city of Little Rock, on the 22d day of November, 1910, and they lived and cohabited together as husband and wife, until the 30th day of August, 1911, when there was born to them a male child. Thereafter appellee was taken seriously ill, and to such an extent that she lost the control of her mental faculties, and, at the instance and recommendation of the family physician, was, by proper

order of the Pulaski County Court, adjudged insane and placed in the State Hospital for Nervous Diseases, for treatment.

Appellee and her husband, at the time of the birth of the child, and during their married life, lived immediately adjoining appellants, and her husband worked for them. Appellee was released from the hospital as cured, and soon thereafter disagreements arose between appellee and appellants, and the evidence is sharply conflicting as to the causes of these disagreements, and is especially so as to the extent to which appellants were responsible for the separation of appellee and her husband. According to appellee's version, appellants, without legal justification or excuse, brought about the separation, as a result of which appellee's husband took away their child, when it was only seven weeks old, since which time appellee had never been permitted to see the child. She recovered judgment in the sum of twenty-five hundred dollars, and, a motion for a new trial having been overruled, this appeal has been duly prosecuted.

*Gus Fulk,* for appellants; *E. B. Buchanan,* of counsel.

1. From the evidence, it is unreasonable and absurd to say that either of the appellants alienated, or attempted to alienate, the appellee's husband's affections from her.

Notwithstanding a verdict was rendered on conflicting evidence, this court will reverse where the verdict is so clearly and palpably against the weight of evidence as to shock the sense of justice of a reasonable person. 70 Ark. 385, and cases cited; 83 Ark. 340; 89 Ark. 321.

Where a plaintiff under the evidence, and inferences deducible therefrom, is not entitled to recover, it is proper for the court to direct a verdict for the defendant. 105 Ark. 526; 88 Ark. 510; 97 Ark. 425; 82 Ark. 334; 75 Ark. 407.

2. Appellee has no right to maintain this action. The gist of the action is not for the loss of services, but the loss of the comfort and society, the *consortium* of the

husband. Neither by the common law, nor by any statute of this State, is a married woman given any right of action. Willes, 581; Peake, N. P. Case, 82; *Id.* 7; 5 T. R. 357; 39 Hun, 40; Cooley on Torts, 224; 47 Barb. 120; 3 Shars., Blackstone's Com., star pp. 142, 143; Kirby's Dig. 623; 36 Wis. 344; 26 Fed. 13; 1 Chitty, Pl. 72; L. R. Q. B. Div. 436; 24 Ont. App. 665; 168 Mass. 312; Schouler, Husband & Wife, § § 61, 143; 1 Bacon, Abr. 66; 2 Ld. Rayon, 938; 67 Barb. 544; 76 Wis. 374; 21 Ohio St. 191.

Can the loss of *consortium* of the husband be construed to come within the meaning of section 6017, Kirby's Digest, relied on by appellee, in the face of the well established rule of construction that a statute will not be taken in derogation of the common law, *unless the act itself* shows such to have been the intention of the Legislature? 1 Ark. 568; 44 Ark. 265; 9 Allen (Mass.) 176. The rule that remedial statutes must be liberally construed, does not apply where such remedy is given in derogation of the common law. In such case the rule of strict construction must apply. 11 Ark. 196; 1 Ark. 388; Lofft's Rep. 438; Dwarres, Statutes, 257; 3 Dallas, 365. Such statutes can not be extended beyond their terms. The wife remains subject to such disabilities as are not expressly removed by the law. 91 Ind. 384; 105 Ind. 410; 41 Me. 405; 3 Allen, 128; 102 Tenn. 439; 1 Barb. 65.

Our Legislature in passing the above statute, intended only to give the wife certain and definite proprietary rights, and did not intend to affect the marital relations of husband and wife. The principle of the unity of husband and wife has been frequently recognized by this court. 56 Ark. 296; 44 Ark. 401; 102 Ark. 352.

Beyond the express provisions of statutory enactments, married women are no more *sui juris* than they were before such acts were passed. 36 Pa. St. 414; 37 Ala. 375; 64 Ark. 389; 5 Mackey, 421.

The word "property" was used in the statute in the sense of something tangible, but even if it was not so

used, this action could not be based upon the idea that a wife's right to the society and aid of her husband, is property. 24 Ont. App. Rep. 653; 67 Barb. 544; 21 Ohio St. 191; 43 Wis. 35; 13 N. Y. 333; 4 Denio, 82; 17 Johns. 283; 6 Bims, 94; 1 N. Y. 24.

*Henry C. Reigler* and *W. T. Tucker,* for appellee.

1. This court will not interfere with the verdict of a jury for want of evidence to sustain it, unless there is a total lack of evidence upon a material point, or the evidence so completely fails to support it that it must have been the result of prejudice or partiality. 46 Ark. 142; 51 Ark. 467; 56 Ark. 297; 17 Ark. 385. Nor where the evidence is conflicting. 57 Ark. 191; 84 Ark. 406. Nor where the case is fairly submitted under proper instructions. 49 Ark. 122.

2. Appellee is entitled to maintain this action. Our Legislature by the act of April 28, 1873, Kirby's Dig., § 5214, removed the common law disability of coverture. 47 Ark. 561.

The Legislature has also expressly given a married woman the rights here contended for. Kirby's Dig., § 6017, subdiv. 2. See also 6 L. R. A. 553; *Id.* 829; 13 Kan. 112; 19 Kan. 285; 26 Fed. 14; 34 Ohio, 621; 1 Crim. Sup. Ct. Rep. 418; 4 L. R. A. (N. S.) 643, and authorities cited in note, pp. 644, 645; Cooley on Torts, 227.

SMITH, J., (after stating the facts). A number of exceptions were saved at the trial both to the admission of evidence and the giving of instructions, and these exceptions have been considered by us; but we do not find any prejudicial error, or question of sufficient importance to require discussion. It is also earnestly insisted that the evidence is insufficient to support the verdict, but when appellee's evidence is given its highest probative value, as we must give it, when testing its legal sufficiency to support the verdict, we can not say that the evidence is legally insufficient to sustain the verdict, nor can we say the amount recovered is excessive.

A question is raised, however, which is one of first impression in this State, and which has received our earnest consideration. This question is the right of the wife to maintain an action for damages for the alienation of the affections of her husband.

There is conflict among the authorities as to whether this right of action existed in favor of the wife, or not, at common law, and although there are numerous cases which hold that she had no such right, the better view appears to be that she did. Common law causes of action for a personal injury to a married woman belonged to her; but the husband was required to sue with her to recover compensation because of her disability to sue. The husband's right of action abated at the death of the wife; but the cause of action survived to the wife and could be maintained by her after the death of her husband. Her right of action existed, but could not be set in motion unless her husband joined, and, by reason of the disability of coverture, it remained in abeyance, and could not be prosecuted in her own name. *Bennett* v. *Bennett,* 116 N. Y. 584; *Smith* v. *Smith,* 38 S. W. 439.

The case of *Bennett* v. *Bennett, supra,* is a leading authority on this subject, and the opinion in that case reviewed the authorities upon this question, and in upholding a judgment in favor of the wife, it was there said: "We think the judgment appealed from should be affirmed, upon the ground that the common law gave the plaintiff a right of action, and that the Code gave her an appropriate remedy."

In 1 Cooley on Torts (3 ed., p. 475), it was said: "At least twenty States now hold that such an action may be maintained, some basing their conclusion upon common law principles and some, more or less, upon the various enabling statutes in favor of maried women, which have been passed in recent years."

A number of cases support the wife's right to recover for the alienation of the affection of her husband, as an invasion of her personal rights, while other cases regard the wife's right to the *consortium* of her husband

as a property right. One of the leading cases taking this latter view is that of *Jaynes* v. *Jaynes,* 39 Hun. 40, in which case it is there said: ''These reciprocal rights may be regarded as the property of the respective parties, in the broad sense of the word property, which includes things not tangible or visible, and applies to whatever is exclusively one's own.'' And it is there further said: ''But as at common law, the husband and wife were regarded as one person, and her personal rights were suspended or incorporated with his, during coverture, so that if she were injured in her person or property, she could bring no action for redress without her husband's concurrence, and in his name as well as her own, she was practically precluded from suing for damages caused by alienating the affections of her husband and enticing him away. * * * Her disability in that respect, we think, has been removed in this State by legislation. A married woman may now, while married, sue and be sued in all matters having relation to her sole and separate property or for any injury to her person or character the same as if she were sole, and it is not necessary or proper to join her husband with her as a party in any action or special proceedings affecting her separate property. If we are correct in holding that the right which the plaintiff alleges was invaded by the defendant in this action was her separate property, the case is within the statutes referred to. If it be not property in the sense in which the word property is used in the statutes cited, it is a personal right, and, as the statutes extend to all injuries, whether to property, person or character, it seems sufficiently comprehensive to embrace an injury to the right in question.''

In the case of *Warren* v. *Warren,* 89 Mich. 123, the wife's right to sue and recover damages for the alienation of the affections of her husband was said to exist under the statute which was set out in the opinion. It was there said: ''Under the statutes of this State relative to the rights of married women, and the decisions of our own courts in relation thereto, the right of the

wife to bring this action, as well as all other suits to redress her personal wrongs, seems to me to be perfectly clear. The statutes provide: 'That the real and personal estate of every female, acquired before marriage, and all property, real and personal, to which she may afterward become entitled, by gift, grant, inheritance, devise, or in any other manner, shall be and remain the estate and property of such female, and shall not be liable for the debts, obligations, and engagements of her husband, and may be contracted, sold, transferred, mortgaged, conveyed, devised, or bequeathed by her, in the same manner and with the like effect as if she were unmarried.' How. Stat., p. 6295.

" 'Actions may be brought by and against a married woman in relation to her sole property, in the same manner as if she were unmarried; and in cases where the property of the husband can not be sold, mortgaged, or otherwise incumbered without the consent of his wife, to be given in the manner prescribed by law, or when his property is exempted by law from sale on execution or other final process issued from any court against him, his wife may bring an action in her own name, with the like effect as in cases of actions in relation to her sole property as aforesaid.' How. Stat. 6297.

"Under these statutes it has been held that a wife is entitled to and may sue for and recover in her own name damages for her personal injuries and suffering from assault and battery (*Berger* v. *Jacobs*, 21 Mich. 215; *Hyatt* v. *Adams*, 16 *Id.* 180-198), and for injuries to her person through the negligence of another (*Mich. Cent. Rd. Co.* v. *Coleman*, 28 Mich. 440); also for slander (*Leonard* v. *Pope*, 27 Mich. 145). If the damages in such cases are her individual property, as expressly held in *Berger* v. *Jacobs*, I can not see why, in reason and on principle, the damages arising from the loss of the society and support of her husband are not also her individual property. Surely, the support and maintenance which she is entitled to from her husband, and which she loses by his abandonment, is capable of ready and accu-

rate measurement in dollars and cents, and can be said to be a property right, which she has lost by the wrongful interference of the defendants. The loss of the society of her husband, and her mental anguish and suffering, are not easily ascertained when compensation is sought, and to be gauged by a money standard; but damages for such anguish and suffering are given, as best the jury can, and are permissible, in most actions of tort. * * *

"There has never been any reason urged against the right of the husband to sue for the loss of the *consortium* of his wife, and if, as shown, the wife is now, under either the liberal letter or spirit of our marriage laws, entitled, as of her own property, to the damages arising from her personal injuries—the injuries of her body or mind—there can be no good reason why she can not sue for and recover damages for the loss of the *consortium* of her husband that does not equally and as well apply to the suit of the husband on account of the loss of her society. The wife is entitled to the society, protection and support of her husband as certainly, under the law, and by moral right, as he is to her society and services in his household. * * *

"It is an old maxim, and a good one, that the law will never 'suffer an injury and a damage without redress.' Will the law aid the husband, and not help the wife in a like case? Not under the present enlightened views of the marriage relation and its reciprocal rights and duties. The reasoning that deprives the wife of redress when her husband is taken away from her by the blandishments and unlawful influences of others is a relic of the barbarity of the common law, which, in effect, made the wife the mere servant of her husband, and deprived her of all right to redress her personal wrongs except by his will."

In the case of *Bennett* v. *Bennett, supra,* the court discussed the nature of this action and treated it as of the nature of a personal injury to the wife, and it was there said: "An injury to the person within the mean-

ing of the law includes certain acts which do not involve physical or personal injury. Thus, criminal conversation with the wife has long been held as personal injury to the husband, and the seduction of a daughter a like injury to the father.'' And it was there further said: ''The basis of the action is the loss of *consortium,* or the right of the husband to the conjugal society of his wife. It is not necessary that there shall be proof of any pecuniary loss in order to sustain the action. *Hermance* v. *James,* 32 How. P., p. 143; *Rinehart* v. *Bills,* 82 Mo. 534. Loss of service is not essential but is merely a matter of aggravation and need not be alleged or proven. *Bigaouette* v. *Paulet,* 134 Mass. 125.'' Cooley says that the gist of the action is the loss of *consortium,* which includes the husband's society, affections and aid. 1 Cooley on Torts, p. 478.

In the case of *Anna Nolin* v. *Marion Pearson* (Mass.), 4 L. R. A. (N. S.) 643, which was a suit by the wife for the alienation of the affections of her husband, the right of the wife to maintain the suit was upheld and many cases are cited in the opinion of the court and in the briefs of counsel; other cases are collected in the foot note, and after a review of the American cases, the following statement is made by the editor of the foot note: ''In the United States, Wisconsin, Maine and New Jersey seem to stand alone in denying to the wife the right to sue for the alienation of her husband's affections and enticing him away from her, thus depriving her of his support, under statutes giving her the right to sue and be sued in her own name.'' But New Jersey can no longer be classed among the States which deny the right of the wife to maintain this cause of action.

In the case of *Sims* v. *Sims,* 29 L. R. A. (N. S.) 842, 76 Atl. 1063, an appeal was taken from the order of the trial court sustaining a demurrer which was interposed upon the general ground that a suit would not lie, which was instituted to recover damages for maliciously enticing away the plaintiff's husband and thereby alienating his affections. The opinion in that case recited that

plaintiff based her right to sue upon an act entitled "An Act for the Protection and Enforcement of the Rights of Married Women." This act provided that any married woman may maintain an action in her own name and without joining her husband therein, for all torts committed against her or her separate property, in the same manner as she lawfully might if a *feme sole;* provided, however, that this act shall not be so construed as to interfere with or take away any right of action at law or in equity now provided for the torts above mentioned. The second section provided that "Any action brought in accordance with the provisions of this act may be prosecuted by such married woman separately in her own name, and the nonjoinder of her husband shall not be pleaded in any such action." The Court of Appeals of New Jersey reversed the action of the trial court in sustaining the demurrer, and in doing so used the following language in construing the act above quoted: "The question, therefore, presented in this case, in the light of the act of 1906, is *res nova,* and the conclusion we have reached is supported by the great weight of authority. That this act was intended to confer the power upon a married woman to protect and enforce her rights is the specific announcement contained in its title. The body of the act declares that she may maintain an action, as a *feme sole* might lawfully do, and without joining her husband therein, for all torts committed against her or her property. Keeping in mind the old law and the existing mischief, it becomes manifest that the legislative intent which inspired this remedial measure could have been only a desire to confer upon the married woman that equality of remedy as an independent suitor, which would enable her to vindicate her right in person for a tort committed against her, and thus remedy the inequality to which she was subjected by the common law."

It will be seen that our statute giving married women the right to sue, which will later be set out, is broader and more comprehensive than the New Jersey

statute, which the Court of Appeals of that State said was sufficient to authorize the maintenance of a suit by the wife such as we have here.

In the case of *Gernerd* v. *Gernerd,* 185 Pa. 236, involving the question here under consideration, the Supreme Court of that State said: "When the wife has been freed from her common law disabilities and may sue in her own name and right for torts done her, we see no reason to doubt her right to maintain an action against one who has wrongfully induced her husband to leave her. Generally, this right has been recognized and sustained in jurisdictions where she has the capacity to sue." One of the earliest American cases holding the wife has the right to sue for the loss of *consortium* of her husband, is the case of *Westlake* v. *Westlake,* 34 Ohio Stat. 627-633, and this has become one of the leading cases, and is cited in many of the subsequent cases on this subject. It was there said: "If, in this State, the common law dominion of the husband over the property and personal rights of the wife has been taken away from him and conferred upon her, and remedies in accordance with the spirit of the civil law have been expressly given to the wife for the redress of injuries to her person, property, and personal rights, all of which I hope to show has been done, then it must follow that she may maintain an action in her own name for the loss of the *consortium* of her husband against one who wrongfully deprives her of it, unless the *consortium* of her husband is not one of her personal rights. * * *

"Is the right of the wife to the *consortium* of the husband one of her personal rights? If it is, then the statute makes the right of action growing out of an injury to the right, the separate property of the wife, for which the Code gives her a right to sue in her own name. Before marriage the man and woman are endowed with the same personal rights. If under no disability, each is competent to contract. When the agreement to marry is entered into, but, before its consummation, each has the same interest in it, and either may sue for a breach

of it by the other. In this State, neither the husband nor wife unconditionally surrenders their personal rights by consummating the contract of marriage. On the contrary, each acquires a personal as well as legal right to the conjugal society of the other, for the loss of which either may sue separately.''

In the third edition of Cooley on Torts, volume 1, page 477, the case of *Foot* v. *Card,* 58 Conn. 1, is quoted from at length with approval, and we find there the following quotation from that case: ''Whatever inequalities of right as to property may result from the marriage contract, husband and wife are equal in rights in one respect, namely, each owes to the other the fullest possible measure of conjugal affection and society; the husband to the wife all that the wife owes to him. Upon principle this right in the wife is equally valuable to her as property, as is that of the husband to him. Her right being the same as his in kind, degree and value, there would seem to be no valid reason why the law should deny to her the redress which it affords to him. But from time to time courts, not denying the right of the wife in this regard, not denying that it could be injured, have nevertheless declared that the law neither would nor could devise and enforce any form of action by which she might obtain damages. In 3 Blackstone's Commentaries, 143, the reason for such denial is thus stated: 'The inferior hath no kind of property in the company, care or assistance of the superior, as the superior is held to have in those of the inferior; therefore, the inferior can suffer no loss or injury.' Inasmuch as by universal consent it is of the essence of every marriage contract that the parties thereto shall, in regard to this particular matter of conjugal society and affection, stand upon an equality, we are unable to find any support for the denial in this reason, and the right, the injury, and the consequent damage, being admitted, there comes into operation another rule, namely, that the law will permit no one to obtain redress for wrong except by its instrumentality, and it will furnish a mode for obtaining adequate redress for

every wrong. This rule, lying at the foundation of all law, is more potent than, and takes precedence of, the reason that the wife is in this regard without the pale of the law, because of her inferiority.''

In this case of *Foot* v. *Card, supra,* a recovery was permitted without reference to any enabling act authorizing the wife to sue alone. The complaint had been demurred to upon the ground that the wife could not alone maintain this action but that her husband was a necessary party to the action, if any cause of action existed. That contention was disposed of in the following language: ''Wherever there is a valuable right, and an injury to it, with consequent damage, the obligation is upon the law to devise and enforce such form and mode of redress as will make the most complete reparation. A technicality must not be permitted to work a denial of justice. The defendant has no possible interest in requiring the husband to be co-plaintiff, other than that she should have security for her costs in the suit, and be protected from a second judgment upon the same cause of action in his name. As she is in no danger of a second judgment, and can compel the plaintiff to give security for costs, it is simply an empty technicality which she here interposes. There are good reasons for the rule that the husband should join in a complaint for damages resulting from an injury to the person, property, reputation or feelings of the wife in every case other than before us. Whenever in any of these she suffers, presumably he suffers. He has a direct pecuniary interest in the result and the defendant is entitled to protection from a second judgment. But in the case before us, it is the pith and marow of the complaint that in alienating the husband's conjugal affection from the wife, in inducing him to deny his conjugal society, in persuading him to give his adulterous affections and society to the defendant, the latter has inflicted upon the plaintiff an injury by which from the nature of the case it is impossible for the husband to suffer injury; for which it is impossible for him to ask redress either for himself

or his wife. * * * In a case of this kind, the wife can only ask for damages by and for herself. The law can not make redress otherwise than to her solely, apart from all others, especially apart from her husband; for no theory of the law as to the merger of the rights of the wife in those of the husband could include her rights to his conjugal affection and society. Although all other debts and rights to her might go to him, there yet remained this particular debt from him to her absolutely alone, and beyond the reach of the law of merger.''

We are not called upon to approve all that we have here quoted from this Connecticut case; but the significance of that opinion is that a recovery was permitted without reference to any enabling act permitting the wife to sue alone.

Many other cases are cited in the cases we have quoted from; but those quoted from show upon what theories and under what circumstances recoveries have been permitted. The absurdity and cruel injustice of the common law fiction of the identity of husband and wife has long been recognized, and the tendency of all modern legislation has been toward the emancipation of the wife. But this amelioration of the wife's condition must come through the legislative function, and her disabilities at the common law exist, except in so far as they have been removed by constitutional conventions, or legislative enactments. Some of the disabilities under which the wife still labors, as the result of the common law fiction of the legal unity of the husband and wife, are pointed out in the opinion in the case of *Kies* v. *Young,* 64 Ark. 381. But while she still labors under the disabilities there recited, we think the Legislature has clearly manifested its purpose to manumit her, so far as maintaining an action to enforce any legal right she may have, or to secure redress for any actionable wrong inflicted upon her, where the recovery would inure to her benefit. ''Where a married woman is a party, her husband must be joined with her except in the following cases:

"*First.* She may be sued alone upon contracts made by her in respect to her sole and separate property, or in respect to any trade or business carried on by her under any statute of this State.

"*Second.* She may maintain an action in her own name for or on account of her sole or separate estate or property, or for damages against any person or body corporate for any injury to her person, character or property.

"*Third.* Where the action is between herself and her husband, she may sue and be sued alone." Kirby's Digest, § 6017.

These words, person, character or property, are of the broadest signification and import, and would appear to include any cause of action which could arise in favor of a married woman, out of any relation which she can legally occupy. Although she still labors under some disabilities, she is given by this statute the power to enforce in her own name any right which she legally possesses. While it appears from a study of the cases, which hold that a wife may sue for the alienation of the affections of her husband, that in some of the States, where the courts so hold, the statutes have entirely manumitted the wife from her common law disability with reference to suing in her own name, it will also appear, from cases which we have cited, and from other cases therein cited, that the right of action has been upheld in the wife's favor where the enabling acts were not as broad as that of this State.

So that, whether this cause of action be denominated a personal right or a property right, the wife, under the laws of this State, may sue if it is either, and the judgment of the court below is therefore affirmed.