25518. EDWARDS *v.* MONROE.

DECIDED DECEMBER 5, 1936.

*Shelby Myrick, Edwin J. Feiler,* for plaintiff in error.

*J. G. Lemon, Aaron Kravitch,* contra.

MacIntyre, J. The exception is to the overruling of a general demurrer to the original petition and of general and special demurrers to the petition as amended. By paragraph, the petition brought by James A. Monroe against Toland J. Edwards is substantially as follows: (1) The defendant is a resident of Chatham County, Georgia. (2) The defendant is a brother-in-law of petitioner having married Essie Monroe, sister of petitioner. (3) Petitioner and Frances Monroe were married eighteen years ago, and lived together until the early part of April, 1932, when they separated. (4) Until about two months before said separation, petitioner and his wife lived happily together, and she was a dutiful, kind, and affectionate wife and loyal and devoted mother, performing all the customary duties required of a married woman and mother. (5) About two months before said separation, said wife "commenced to neglect her home, went out on unexplained errands, remained out late at nights, and commenced to nag, abuse, torment, and offend petitioner, and to neglect their home, the care of their child, and became very dissatisfied with her surroundings and with petitioner, and by her actions led petitioner to understand that she no longer cared for his companionship, consortship, or marital companionship. That the quarrels between said parties and the mental cruelty which she visited upon him became so unbearable, petitioner was compelled to separate from her the early part of 1932, and in May, 1934, instituted a suit for divorce . . on the grounds of mental cruelty, and was divorced from his wife at the December term, 1934, of . . Chatham superior court." (6) "At the time petitioner separated from his wife because of her acts of cruelty as aforesaid, he neither suspected nor knew that the real cause for the change of her affections towards him, and for changing her attitude and conduct towards him, his child, and her home, was due to the criminal enticement and adulterous relationship that had commenced to exist between the said Frances Monroe and the defendant." (7) "Petitioner charges that . . defendant began a systematized campaign, . . on or about July 1, 1931, . . to seduce, entice, and lead away from her husband, child, and home the said Frances Monroe, and that by his attentions and by the large sums of money which he lavished upon her,

and by his professions of love and affection for her . . the said . . Edwards did succeed in weaning away . . Frances Monroe from her husband, her home and child, by the cause of dissatisfaction which he created in the mind of . . Frances Monroe, and is the primary result of which the home of petitioner was disrupted and destroyed, and was the cause of the divorce which resulted, and the definite and permanent separation between said parties." The defendant knew that Frances Monroe was the lawful wife of petitioner and was living with him happily as his wife, and that his "lascivious attentions to her" were unlawful and contrary to good morals. (8) "Petitioner alleges . . that . . Toland J. Edwards, unknown to petitioner, after their separation and before the institution of a suit for divorce, rented and maintained for . . Frances Monroe a luxurious apartment and house . . on Hopkins Street in said . . county, and contributed to her support for . . one year, and that subsequently thereto and at the present time the said defendant is supporting and maintaining and was supporting and maintaining . . Frances Monroe prior to the divorce from her husband . . in a nicely furnished home on the Bee Road in Savannah." (9) Petitioner is a hardworking, reputable negro of good family, and is an ex-mail-carrier now receiving $96 per month as a pension from the government. He is fifty-two years old, and Frances Monroe is thirty-eight years old and of good family, and before her enticement and seduction by the defendant she was highly regarded among the better element of negroes. (10) Defendant came to Savannah as a boy, and worked for petitioner's father in a highly profitable undertaking business, and subsequently married petitioner's sister. (11) The defendant is the owner of said undertaking business, which is reasonably worth $50,000, and because of his wealth "defendant was able and did captivate and capture the affections of petitioner's wife because of the sums of money he was able to lavish upon her, and which petitioner, because of the fair salary he was receiving as a mail carrier, was unable to compete with, as a result of which defendant stole away the affections of petitioner's wife." (12) Because of "the trust and regard that he held for his wife, built up through a long number of years, he did not suspect her of infidelity, or that the intentions of his brother-in-law on many visits to their home was other than honorable; and petitioner did

not learn the truth of the underlying causes of his wife's disgust for him, and that said divorce and separation was due to the conduct . . of . . defendant, until about two or three months ago and after said divorce had been obtained between said parties." (13) "Petitioner avers that he has been damaged in the sum of $25,000, because of the loss of consortium, comradeship, and companionship of his wife, because of the separation and divorce as aforesaid, and because of the loss of her services in their home as a housewife and as the mother of his child, and because of the mental grief and suffering which he has sustained, and because of the shame, humiliation, and disgrace which he has suffered because of the known infidelity of his wife, all of which acts by said defendant were unlawful and illegal on the part of defendant, and which petitioner now prays judgment therefor."

On May 29, 1935, the defendant filed a general demurrer to the petition. On June 25, 1935, the plaintiff amended his petition substantially as follows: (1) By adding to paragraph 5 the following: "After the separation of said parties in 1932, petitioner, although living separate and apart from his wife, saw her frequently, made provisions for her support and maintenance, and tried in every way to adjust their differences and to recommence their married life, and on more than one occasion it appeared that he had succeeded in changing her mental viewpoint; but that finally during the early part of 1934, on or about January 1st of that year, his wife again commenced to show her distaste and disgust for petitioner, and finally told him she no longer cared for him, that she had tried to bring herself to like him, but that now she realized definitely and finally that to live with him any further was useless, and that the separation between them had become definite and final; and your petitioner then realized that his wife's affections had been definitely alienated; hence an action for divorce was made the same year and obtained a divorce at the December term of said court, as aforesaid." (2) Amends said petition by adding paragraph 14, as follows: "Petitioner shows that although, as alleged, the said defendant began a systematized campaign late in 1931 to seduce, entice, and alienate from her husband, child, and home the wife of petitioner, that said efforts on the part of said . . Edwards were not finally successful, and petitioner's wife was not finally alienated from him until on or about January

1, 1934. That while the efforts on the part of the defendant were responsible for the cause of quarrels and disagreements between said parties and had led to the separation, that there had been no permanent estrangement or alienation between said parties. That on the contrary that even during the time of the separation, at various times, petitioner and his wife had practically succeeded in readjusting their differences, and but for the interference of the said . . Edwards, which facts were then unknown to . . petitioner, there would not have been a permanent alienation, and that the permanent alienation of the affections of petitioner's wife and the permanent disruption of their home occurred in said State and county, and as a result of the defendant's unlawful acts on or about the first day of January, 1934." (3) "Petitioner shows fraud, deception, and artifice was used by . . defendant during the time he was communicating with and in company with petitioner's wife, and while he was endeavoring to entice her away from her husband, to keep and prevent petitioner from learning of the illegal and unlawful acts and attempts . . of . . defendant to alienate the affections of his wife. That . . defendant by professions of friendship and because of his relationship, as aforesaid, was welcome at the home of petitioner. That in the absence of petitioner, through stealth and by having won the confidence of petitioner through his professions of friendship and good graces of the friend and family, the said defendant was able in secrecy to play upon the emotions of plaintiff's wife. That, in order to prevent plaintiff from knowing of his associations with petitioner's wife, said defendant would meet clandestinely the said wife of petitioner at times when . . defendant knew . . plaintiff was at work and could not know of these meetings. That, in order to keep said petitioner from knowing of his relations with petitioner's wife, he maintained for her a home on Hopkins Street, as set out in paragraph eight of said petition, which was rented in the name of petitioner's wife, and said defendant would visit the same clandestinely late at night at a time when his presence could not be detected or known. That, during the time that petitioner and his wife were having their disagreements, said defendant would sympathize with plaintiff and lead him to believe that he . . was attempting to patch up their differences, and that he, said plaintiff, should not worry, that the defendant, through his wife

Essie, sister of plaintiff, would be able to bring about a reconciliation, which promises and apparently friendly protestations on the part of . . defendant, petitioner charges, were made for the sole purpose of perpetrating a fraud upon said plaintiff, to displace any suspicions which might have lurked in his mind as to the intention of . . defendant, and to afford . . defendant an opportunity to visit the said plaintiff's wife, and to explain away any reasons why he was visiting the plaintiff's wife, and to keep . . plaintiff in ignorance as to the reasons for his attentions upon plaintiff's wife, all of which acts . . were part of the scheme and conspiracy to, by the use of such fraud and artifice, prevent petitioner as a trustful husband not to entertain any ideas as to the infidelity of his wife, and as a result of said acts of concealment and artifice and fraud on the part of . . defendant the illegal relationship between . . defendant and plaintiff's wife did not become known to him until on or about the 1st day of January, 1934, when the efforts on the part of said defendant to finally entice her away from her husband succeeded, and plaintiff then found out about the alienation, when the illicit campaign had finally succeeded and she had been finally and permanently weaned away from her husband and home."

The defendant's demurrer to the petition as amended is substantially as follows: (1) The allegation in the first paragraph of the amendment that "it appeared that he had succeeded in changing her mental viewpoint," is a conclusion not supported by facts. (2) The allegation in the second paragraph of the amendment that "said efforts on the part of said . . Edwards were not finally successful and petitioner's wife was not finally alienated from him until about January 1, 1934," states conclusions of the pleader and "fatally vary from the other allegations in the petition that the separation . . took place in April, 1932." The allegation in the second paragraph of the amendment that "petitioner and his wife had practically succeeded in readjusting their differences, and but for the interferences of the said . . Edwards, which facts were then unknown to . . petitioner, there would not have been a permanent alienation, and that the permanent alienation of the affections of petitioner's wife and the permanent disruption of their home occurred in said State and county and as a result of the defendant's unlawful acts on or

about the first day of January, 1934," is insufficient in law and fact, in that (a) Said allegations are vague and lack certainty. (b) Said allegations are conclusions of the pleader. (c) Said allegations do not constitute any legal ground or basis for a cause of action. (d) The allegation that petitioner and his wife had *practically* succeeded in adjusting their differences, is uncertain and insufficient, the word "practically" being used in a vague and indefinite sense. (3) "The third paragraph of the amendment wherein the plaintiff seeks to amend paragraph 15 of his petition should be stricken from the petition, in that it sets forth no facts which would prevent the bar of the statute of limitations from operating in this case." The defendant "generally demurs to the . . petition as amended, and . . says: (1) "That the petition shows upon its face that the . . action is one for loss of consortium of his wife, and the actual loss of consortium . . took place in April, 1932, the day the plaintiff alleges his wife separated from him, and the petition accordingly shows . . "That the . . cause of action is based upon a tort, to wit, the barred by the statute of limitations of . . Georgia." (2) "That the . . cause of action is based upon a tort, to wit, the loss of consortium of his wife, and such an action must under the statute . . be brought within two years from the date that the cause of action accrues, and said cause of action . . accrued . . in April, 1932, and the petition shows . . that the said cause of action, if any the plaintiff has, was and is barred by the statute of limitations." (3) "The matters and facts . . in said petition do not constitute any cause of action against this defendant, in that the plaintiff having divorced his wife has no right of action against . . defendant." (4) "The matters and facts set forth in said petition do not constitute any legal cause of action of any kind against . . defendant."

Since counsel for both parties have devoted a very large portion of their briefs to the parts of the demurrer invoking the statute of limitations, we shall consider that question first. Unquestionably, "actions for injuries to the person shall be brought within two years after the right of action accrues." Code, § 3-1004. In *Sessions* v. *Parker,* 174 *Ga.* 296, 302 (162 S. E. 790), the Supreme Court quotes approvingly from Weber *v.* Weber, 113 Ark. 471 (169 S. W. 318, L. R. A. 1915A, 67 Ann. Cas. 1916C, 743), as

follows: "In the case of Bennett *v.* Bennett [116 N. Y. 584, 25 N. E. 17, 6 L. R. A. 553], the court discussed the nature of this action and treated it as of the nature of a personal injury to the wife, and it was there said: 'An injury to the person within the meaning of the law includes certain acts which do not involve physical or personal injury. Thus, criminal conversation with the wife has long been held a personal injury to the husband, . . and the seduction of a daughter a like injury to the father.' And it was there further said: 'The basis of the action is the loss of consortium, or the right of the husband to the conjugal society of his wife. It is not necessary that there shall be proof of any pecuniary loss in order to sustain the action. . . Loss of service is not essential but is merely a matter of aggravation and need not be alleged or proven.' . . Cooley says that the gist of the action is the loss of consortium, which includes the husband's society, affections, and aid. 1 Cooley on Torts, p. 478." It may not be amiss to state in this connection that chapter 105-12 of the Code of 1933, which deals with actions similar to the one at bar, is headed, "Indirect Injuries to Person," and that this nomenclature follows the Codes of 1895 and 1910. The actions referred to in the Code of 1933 are: § 105-1202, abducting or harboring wife; § 105-1203, adultery or criminal conversation; § 105-1204, seduction of daughter; § 105-1205, furnishing liquor to minor son of another; § 105-1206, gaming with minor son of another. Our view is that the present action is for an injury to the person; that the loss of consortium is the gist of the action; and that, unless the statute is tolled, the action is barred by the statute of limitations. "If the defendant . . shall have been guilty of a fraud by which the plaintiff shall have been debarred or deterred from his action, the period of limitation shall run only from the time of the discovery of the fraud." Code, § 3-807. See also *Persons* v. *Jones,* 12 *Ga.* 371 (2) (58 Am. D. 476). "Mere ignorance of the existence of the facts constituting a cause of action does not prevent the running of the statute of limitations." *Davis* v. *Boyelt,* 120 *Ga.* 649 (2) (48 S. E. 185, 66 L. R. A. 258, 102 Am. St. R. 118, 1 Ann. Cas. 386). See also *Barrett* v. *Jackson,* 44 *Ga. App.* 611 (162 S. E. 308), and cit., where it was ruled: "The test to be applied in determining when the statute of limitations begins to run against an action sounding in tort is in

whether the act causing the damage is in, and of itself an invasion of some right of the plaintiff, and thus constitutes a legal injury and gives rise to a cause of action. If the act is of itself not unlawful in this sense, and a recovery is sought only on account of damage subsequently accruing from and consequent upon the act, the cause of action accrues and the statute begins to run only when the damage is sustained; but if the act causing such subsequent damage is of itself unlawful in the sense that it constitutes a legal injury to the plaintiff, and is thus a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, however slight the actual damage may be. 37 C. J. 880, § 248; 17 R. C. L. 831, § 193; *Davis* v. *Boyett, supra.*" We quote also from the *Barrett* decision as follows: "But a mere failure to sue by reason of fraud will not relieve the bar of the statute, since the plaintiff must be debarred or deterred from suing by reason of fraud involving moral turpitude, independently of the facts which give rise to the cause of action itself. *Printup* v. *Alexander,* 69 *Ga.* 553; *Austin* v. *Raiford,* 68 *Ga.* 201; *Downs* v. *Harris,* 75 *Ga.* 834; *Anderson* v. *Foster,* 112 *Ga.* 270, 273 (37 S. E. 426); 17 R. C. L. 852, § 213; Smith *v.* Blachley, 198 Pa. 173 (47 Atl. 985, 53 L. R. A. 849)." Our view is that the petition as amended alleges conduct and acts on the part of the defendant which amount to such fraud as tolls the statute of limitations. We are also satisfied that the petition as amended sets out a cause of action. We do not understand that the plaintiff's divorce defeated his cause of action. The special demurrers and the parts of the pleading at which they were directed have been fully set out. We do not think any of the special demurrers are meritorious. We therefore hold that the court's judgment overruling the demurrers was correct.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*