## 26701. HOSFORD v. HOSFORD.

DECIDED JULY 9, 1938.

*Kennedy, Campbell & Therrell, Thomas J. Sappington,* for plaintiff.

*Park & Strozier, A. Russell Ross,* for defendant.

MacINTYRE, J. On July 6, 1937, Mrs. E. C. Hosford brought this action against Mrs. C. C. Hosford, mother of her divorced husband, for alienation of her husband's affections. The plaintiff alleges in her petition, that she and the defendant's son were married in 1905, and lived happily together in Atlanta until 1931, at which time, because of financial difficulties, they moved to Eastman, Georgia. There were two children born to the plaintiff and her husband, Mildred, 21-year-old daughter now living, and another daughter who has been dead for some time. Upon arrival in Eastman the defendant insisted that the plaintiff and her family come and live with her. This was done, and they continued living with the defendant for some time, later moving to a house owned by the plaintiff's husband. The plaintiff's husband was the only child of the defendant, and the defendant has always been a possessive and jealous mother, and attempted to prevent the marriage of her son to the plaintiff by offering him bribes if he would not marry the plaintiff. The plaintiff and her husband lived the normal, happy, and contented married life, but after they moved to

Eastman this relationship gradually changed, and, as the plaintiff alleged, the defendant deliberately, intentionally, maliciously, and without cause brought about separation and divorce of the plaintiff and her husband. Shortly after they made their home with the defendant, the defendant told her son "that he made a mistake when he married petitioner, and had made an even greater one when he brought his wife and child to Eastman; that his wife and daughter were eating her out of house and home; and that although she loved and wanted to always take care of him, she saw no need or reason in boarding his wife and daughter who in no way helped him but were millstones around his neck." The defendant openly made the same remarks in the presence of the husband, and humiliated and slandered the plaintiff, called her lazy, extravagant, and selfish, which the plaintiff denies, and says that she in fact did all the housework, cooking, etc., and sold some of her personal belongings in order to purchase food and clothing. It is alleged that the defendant deliberately and maliciously did these acts with the intent to bring about a divorce and separation of the plaintiff and her husband. It appears that the defendant is a wealthy woman, owning in her own right money and property in the amount of thirty or thirty-five thousand dollars, and in addition she has a life-estate in the estate of her late husband, which is worth about thirty or forty thousand dollars; and she threatened to cut the plaintiff's husband off if he did not accede to her entreaties to leave the plaintiff. Realizing this condition, the plaintiff persuaded her husband and they moved into another house. But the defendant continued her acts, and on one occasion attempted to throw hot grease into the plaintiff's face in order to mar her physical appearance so that the husband would lose his love for her. The husband drank a great deal, and being in fear that he would be cut off by his mother, he adhered to her advice and began persecuting the plaintiff. On June 21, 1934, he got drunk and so abused the plaintiff that she had to go to bed. On the same night the defendant came to their house and counseled with the husband, and thereafter the husband moved into another room in the house and never lived with the plaintiff again, and from that night until the date when she moved from his home he refused to recognize her as his wife or to live with her as his wife. She continued living in the other room, as stated, until his abuse become so frequent

and violent that in fear of her life and health she moved from her husband's house on October 17, 1936. In May, 1937, she was granted a divorce, and upon advice of her counsel she accepted $300 as settlement of alimony, because her husband threatened to leave the jurisdiction of the court. It was further alleged that the defendant conspired with her son to defraud the plaintiff by getting him to give the defendant title to his house, so that he would not have any property from which the plaintiff could enforce payment of alimony. The plaintiff asked actual and punitive damages in the amount of $25,000. The defendant demurred to the petition, on the ground that the cause of action was barred by the statute of limitations. The judge sustained the demurrer and dismissed the action. To this ruling the plaintiff excepted.

The first question for the determination of this court is, when did the cause of action for the alienation of the affections of the plaintiff's husband arise or accrue? The plaintiff contends that the loss of consortium was not complete until October, 1936, the date when the plaintiff moved from her husband's home, and that the cause of action did not accrue until that date. The gist of the action is loss of consortium, which includes the right of the wife to the conjugal affection, fellowship, company, co-operation, and aid in every conjugal way. Black's Law Dictionary (3d ed.), 408. "It is not a prerequisite to the right of the plaintiff to maintain this suit in her own name that she should have been abandoned by her husband in the literal sense, nor that she should have actually separated herself from him by or without a decree of divorce. If she had suffered the wrong complained of, her right to redress is absolute; it can not be made to depend upon any of these conditions." Foot v. Card, 58 Conn. (18 Atl. 1027, 6 L. R. A. 829, 18 Am. St. R. 258). 1. "Conceding, therefore, for the sake of argument, that the action at bar is one solely for alienation of affections, as appellant's counsel contends, we are to decide whether the fact that the plaintiff's husband did not actually and in the literal sense of the term abandon her will operate to defeat her right of recovery. We are clear that it will not." Rott v. Goehring, 33 N. D. 413 (157 N. W. 294, L. R. A. 1916E, 1089, Ann. Cas. 1918A, 643). "Loss of service is not the basis of the right of action, for pecuniary loss is not a necessary element; but the right to recover is based upon loss of consortium." Pugsley v. Smyth, 98

Oregon, 448 (194 Pac. 686) ; 2 Cooley on Torts, 5. We think that the loss of consortium was complete and the cause of action accrued on July 21, 1934, the date when the husband moved into another room and thereafter "refused to recognize petitioner as his wife or to live with her as his wife;" and we are further of the opinion that loss of consortium is the gist of the action, and that loss of services, or other pecuniary losses, are merely in aggravation of damages.   Bennett *v.* Bennett, 116 N. Y. 584 (23 N. E. 17, 6 L. R. A. 553). The true test as to when a cause of action arises or accrues, as used in the statute of limitations, is to ascertain the time when the plaintiff could first have maintained his action to a successful result.   *Mobley* v. *Murray County,* 178 *Ga.* 388 (173 S. E. 680) ; Bruner *v.* Martin, 76 Kan. 862 (93 Pac. 165, 14 L. R. A. (N. S.) 775, 123 Am. St. R. 172, 14 Ann. Cas. 39) ; 37 C. J. 810, § 153; 17 R. C. L. 692, § 40.   By the overwhelming weight of authority, the gist of the action for alienation of affection is loss of consortium.   *Edwards* v. *Monroe, 54 Ga. App.* 791 (189 S. E. 419) ; Rott *v.* Goehring, supra; Dodge *v.* Rush, 28 App. D. C. 149 (8 Ann. Cas. 671) ; 30 C. J. 1123, § 977; 2 Cooley on Torts, § 170. Consortium has been defined as the "right of the husband or wife to the conjugal fellowship, company, co-operation, and aid of the other in every conjugal way."   Black's Law Dictionary, 3d ed. When was this consortium actually lost?  Was it lost on the date that the husband violated the conjugal or matrimonial rights and began to live in a separate room, or was it lost on the date when she moved from his home?  The opinion in Heermance *v.* James, 47 Barb. (N. Y.) 120, 126, discusses this proposition at length and a part thereof is as follows: "What reason can be given that should make it material that there be a technical physical separation of the parties in order to constitute a cause of action?  I apprehend that the separation which occasions the real injury, suffering, the loss, is based upon a higher principle; it is one that' strikes at the source of the highest enjoyments of life; it is alienated affection, the loss of comfort, fellowship, society, aid and assistance in domestic affairs; the loss of conjugal rights."  The cause of action for the injury in the case at bar arose when the wife was deprived of her conjugal right, which, under the allegations of the petition, was on June 21, 1934.   It was not necessary that either the husband or the wife should leave the home of the

other, in order for the wife to maintain the suit to a successful result. Heermance v. James, Mobley v. Murray County, supra. Therefore it follows that the statute of limitations began to run from June 21, 1934, and not from the date when she left his home, October 17, 1936.

Now the question for the determination of this court is whether an action for alienation of affection is an injury to property or to the person. The period of limitation on property rights is four years (Code, § 3-1002); on personal rights, two years (Code, § 3-1004). If the present action is the former, it is not barred; if it is the latter, it is barred. There are numerous foreign authorities to sustain each view. However, this State follows the latter and holds that an action for alienation of affection is an injury to the person. "It may not be amiss to state in this connection that chapter 105-12 of the Code of 1933, which deals with actions similar to the one at bar [action for alienation of affection], is headed, 'Indirect Injuries to Person,' and that this nomenclature follows the Codes of 1895 and 1910. The actions referred to in the Code of 1933 are: § 105-1202, abducting or harboring wife; § 105-1203, adultery or criminal conversation; § 105-1204, seduction of daughter; § 105-1205, furnishing liquor to minor son of another; § 105-1206, gaming with minor son of another. Our view is that the present action is for an injury to the person; that the loss of consortium is the gist of the action; and that, unless the statute is tolled, the action is barred by the statute of limitations." Edwards v. Monroe, 54 Ga. App. 791, 798 (189 S. E. 419). The case of Sessions v. Parker, 174 Ga. 296 (162 S. E. 790), does not decide that such an action is a property right, as argued by the plaintiff, nor does it decide that the action is personal. It is authority for the proposition that a married woman living separate from her husband can maintain an action for damages against a third person for alienation of her husband's affections and for loss of consortium. In the opinion Judge Atkinson quoted at great length from Weber v. Weber, 113 Ark. 471 (169 S. W. 318, L. R. A. 1915A, 67, Ann. Cas. 1916C, 743), stating that it completely covered the Sessions case on that proposition. The Weber decision, citing authorities to sustain each view, also discussed the question whether or not such an action is a personal or property action. However, on that point the Arkansas court ruled that "whether

the cause of action be denominated a personal right or a property right, the wife, under the laws of the State, may sue if it is either." Therefore it follows that *Sessions* v. *Parker*, supra, is not authority for the proposition that such a suit is for a property right or a personal right.

In *Arnold* v. *Rogers*, 43 *Ga. App.* 390 (159 S. E. 136), this court in effect said only that the statute of limitations in that case applied whether the action was a personal or a property right. However, in *Edwards* v. *Monroe*, supra, this court expressly held that it was a personal right. In the *Edwards* case this court cited *Sessions* v. *Parker* merely for the purpose of stating a proposition of law which it adopted, to wit, that such an action is for an injury to the person. "The basis of the action is loss of consortium, or the right of the husband to the conjugal society of his wife. It is not necessary that there should be proof of any pecuniary loss in order to sustain the action. . . Loss of service is not essential, but is merely matter of aggravation, and need not be alleged or proved. . . 'To entice away or corrupt the mind and affection of one's consort is a civil wrong for which the offender is liable to the injured husband or wife. The gist of the action is not the loss of assistance, but the loss of consortium of the wife or husband, under which term are usually included the person's affection, society, or aid.' Bigelow on Torts, 153. 'We see no reason why such an action can not be supported where by statute the wife is allowed to sue for personal wrongs suffered by her.' Cooley on Torts 228." Bennett *v.* Bennett, 116 N. Y. 584 (23 N. E. 17, 6 L. R. A. 553). The cause of action being an action for injury to the person, and having arisen more than two years before the action was brought, it is barred by the statute of limitations. The court did not err in sustaining the demurrer.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*