Joseph K. ORR, Appellant,

v.

Robert J. SASSEMAN, Appellee.

No. 16072.

United States Court of Appeals
Fifth Circuit.

Dec. 14, 1956.

Rehearing Denied Feb. 4, 1957.

John L. Westmoreland, John L. Westmoreland, Jr., Atlanta, Ga., for appellant.

William H. Schroder, Atlanta, Ga., Frank J. Romano, Jr., Chicago, Ill., T. M. Smith, Jr., Atlanta, Ga., Troutman, Sams, Schroder & Lockerman, Atlanta, Ga., of counsel, for appellee.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

The appellee here was the plaintiff below in an action for the alienation by the defendant-appellant of the affections of the plaintiff's wife. The plaintiff is a resident of Evanston, Illinois. The defendant resides in Georgia. Federal jurisdiction rests on diversity of citizenship.

The plaintiff and his wife, Robert J. and Cornelia Cameron Sasseman, spent the 1954 Christmas Holidays with her parents, Mr. and Mrs. James L. Cameron, in Atlanta, Georgia. The defendant, Joseph K. Orr, had been a friend of the Camerons for some years and a frequent visitor in their home. The company of which the defendant was vice president acquired most of its raw materials from Mr. Cameron's employer. The defendant had met Mrs. Sasseman about two years before and had seen her one other time before Christmas of 1954. On the second evening after the arrival of the Sassemans in Atlanta the defendant went by the Cameron home and was introduced to the plaintiff. Shortly after New Year's Day the plaintiff returned to Illinois and his wife remained in Atlanta until the early part of February. It is during this interval of about a month that the defendant is said to have alienated the affections of the plaintiff's wife. Early in January the defendant and his wife, another married couple, and Mrs. Sasseman went out together for dinner. The others returned with the defendant and his wife to the Orr home. The other couple left, about two-thirty Mrs. Orr retired and the defendant took Mrs. Sasseman to her parents' home. One evening Mrs. Sasseman was taken by Orr in his car for a visit with her cousin and a return to her parents' home. Later in January the defendant planned a fishing trip to Marathon, Florida, primarily for the benefit of Mrs. Cameron. It was originally planned to take along another daughter, Janet Cameron, and a friend of hers. Janet and her friend were unable to go and Mrs. Cameron said that she would bring Cooie, by which name Mrs. Sasseman was known. The trip was made in the plane of the company with which Orr was connected. They were out two nights and three days or three nights and two days and returned to Atlanta. On this expedition were Mrs. Cameron, Mrs. Sasseman, Mr. Orr, and the pilot. On one other occasion Mrs. Sasseman accompanied Orr on a business trip by plane, operated by the company's pilot, from Atlanta to Athens, Georgia, of about three hours duration. Such is the extent of the association between Orr and Mrs. Sasseman in Georgia as shown by the direct evidence of the record. On February 5, 1955, Mrs. Sasseman returned to the Sasseman home in Evanston, and there was testimony that on her return confessed to a friend an affection for Orr, stated that she was "mixed up", asserted that her relationship with him was "on a friendly basis so far", and "that he had done nothing more than kiss her at that point". Mrs. Sasseman told her friend, so the friend testified, that she didn't think she loved her husband any more and that her

friends and some of her other relatives in Atlanta liked Joe Orr and "they thought they made a darling couple".

Evidence was received by the Court of some events occurring subsequent to the departure of Mrs. Sasseman from Georgia. By this evidence it was shown that in the latter part of March, 1955, Orr went to Pensacola, Florida, and was there joined by his brother-in-law, Claud Shelton, Mr. and Mrs. Cameron, their daughter, Ruthie Mayes, and her husband, Jack Mayes, and Mrs. Sasseman and one of her children. This group went aboard a boat recently acquired by a corporation of which Orr was a substantial stockholder. A ten-day cruise took the boat and those on board it to Miami, Florida. The day after arriving there those in the party left for their homes. Orr and Mrs. Sasseman were on the same plane from Miami, he leaving at Atlanta, and she continuing through to Chicago. Evidence was also received of a series of meetings in Chicago between Orr and Mrs. Sasseman during April of 1955, some of which were in his hotel room. There they had a brief visit at one-thirty in the morning from Sasseman and two private investigators employed by him. This evidence of happenings after Mrs. Sasseman left Atlanta was admitted, not as proof in itself of alienation of affections, but for the purpose of showing the relationship or conduct of Orr and Mrs. Sasseman while she was in Georgia.

By a statute of Illinois, where the defendant asserts the tort was committed, if at all, punitive, exemplary, or aggravated damages are not allowed for alienation of affections and recovery is limited to actual damages sustained. Ill.Rev. Stat.1955, Ch. 68, § 34 et seq. Under the Georgia law, recovery is permitted, not only of actual damages but aggravated, punitive and exemplary damages and compensation for wounded feelings.

At the trial it was contended by the defendant that he had not alienated the affections of plaintiff's wife; that the plaintiff had long since, by conduct which we need not here recount forfeited his wife's affections; that the tort was committed, if at all, in Illinois where by statute only actual damages sustained can be recovered in an alienation action and punitive, exemplary and aggravated damages are denied.

The jury returned a verdict for the plaintiff in the amount of $17,500. The defendant filed and the court denied a motion for judgment notwithstanding the verdict and, in the alternative, for a new trial. From the judgment the defendant has appealed specifying a number of alleged errors and these he groups into three questions, (1) was the evidence sufficient to constitute a cause of action for alienation of affections, (2) was the evidence sufficient to create any issue of fact for the jury to determine, and (3) did the cause of action for alienation of affections, if any, accrue in the State of Georgia. These questions as here presented are but aspects of the single problem of whether the evidence showed a cause of action accrued in the State of Georgia. Since Mrs. Sasseman left Georgia on or about February 5, 1955, it becomes necessary to ascertain if there was evidence adequate to show the accrual of the cause of action as to that date.

The gist of the action for alienation of affections is the loss of consortium. Edwards v. Monroe, 54 Ga. App. 791, 189 S.E. 419; Hobbs v. Holliman, 74 Ga.App. 735, 41 S.E.2d 332; 27 Am.Jur. 125, Husb. and Wife, § 524. Consortium is defined to be " 'the conjugal fellowship of husband and wife, and the right of each to the company, co-operation and aid of the other in every conjugal relation' ". McMillan v. Smith, 47 Ga.App. 646, 171 S.E. 169, 171. It "is a property right growing out of the marriage relationship, and includes the exclusive right to the services of the spouse and to the society, companionship, and conjugal affection of each other." Hobbs v. Holliman, supra [74 Ga.App. 735, 41 S.E.2d 335]. It cannot be denied that the plaintiff lost the consortium of his wife. It is not argued that she did not give her affections to the defendant. It is urged, however, that the evidence

with respect to the association between the defendant and the plaintiff's wife in Georgia and prior to February 5, 1955, established nothing more than a mere friendly relation which the Court of Appeals of Georgia has said is insufficient to establish a violation of the husband's legal rights. Martin v. Ball, 30 Ga.App. 729, 119 S.E. 222. But the evidence of the subsequent actions which can be considered as throwing light upon the conduct in Georgia, and the admissions of Mrs. Sasseman on her return to Illinois, presented a factual picture from which it might well have been inferred that she returned to Illinois without any longer having any affection for her husband. This evidence was received without objection and no error is assigned because of its receipt. It is our opinion that the evidence was properly received. The subsequent events were material, and evidence of them was proper as explaining the prior conduct. Paulson v. Scott, 260 Wis. 141, 50 N.W.2d 376, 31 A.L.R.2d 706. The testimony of Mrs. Sasseman's friend as to what Mrs. Sasseman told her was hearsay but such testimony was probably admissible even though it was hearsay. The Court of Appeals of Georgia has quoted with approval from 27 Am.Jur. 154, Husb. and Wife, § 556, as follows:

" 'Evidence is admissible, in an action for alienation of affections or criminal conversation, to show the motives, feelings, emotions, and relations of the parties with respect to the loss of affection or consortium or the desertion of the plaintiff by his or her spouse, and a wide latitude is exercised by the courts in admitting evidence for such purpose, which ordinarily might be subject to the objection against hearsay evidence and self-serving declarations.' " Sanders v. Chandler, 71 Ga.App. 337, 30 S.E.2d 813, 815.

The defendant submits that the evidence shows that the plaintiff's wife had no affection for her husband while she was in Atlanta and hence the loss had been sustained before the time when the association with Orr began. It is enough for the disposition of this contention to say that there was ample evidence to the contrary and the question was resolved by the verdict.

The defendant points out that upon Mrs. Sasseman's return to Illinois during early February of 1955, she and her husband resumed a marital association. This, says the defendant, demonstrates that the plaintiff had the consortium of his wife after she left Georgia, that his subsequent loss of consortium, such loss being the gist of the action, could not sustain a cause of action alleged to have previously accrued. The defendant, not being "handcuffed and shackled by the vice of consistency", says that as the plaintiff husband was not in Atlanta during the greater and latter part of his wife's visit there, he did not have her consortium at that time and place, and the defendant could not have then and there deprived the plaintiff of something he did not have. It is our view that if the events prior to February 5, 1955, caused the alienations of the plaintiff's wife by the defendant it would be difficult to say that the alienation occurred in Illinois as the defendant had not been in the company of plaintiff's wife in that state as of that date. The guides which are to point us away from the dilemma into which the polemics of the defendant would lead us may, to some extent, be found in the decisions determining the time when a cause of action accrues for the purpose of applying statutes of limitation. Of such cases there are several from the appellate courts of Georgia. Among these we are asked to consider Barrett v. Jackson, 44 Ga.App. 611, 162 S.E. 308; Edwards v. Monroe, 54 Ga.App. 791, 189 S.E. 419; Hosford v. Hosford, 58 Ga.App. 188, 198 S.E. 289; Hobbs v. Holliman, 74 Ga.App. 735, 41 S.E.2d 332. These decisions establish the doctrine that the cause of action accrues when the consortium is lost. The knowledge of the injured spouse is not necessary to the accrual of the cause of action, Edwards v. Monroe, supra. The cause of action accrues when or immedi-

ately after the consortium is lost. Hobbs v. Holliman, supra.

The law of the place where the tort or wrong has been committed is the law by which liability is· to be determined. The place of the wrong is the place where the injury was sustained rather than where the acts were committed. It is the place where the last event necessary to make an actor liable for an alleged tort takes place. 15 C.J.S., Conflict of Laws, § 12a (1), (2), page 896, et seq.; Restatement, Conflict of Laws, § 377. Consortium may be lost even though the husband and wife are not separated and it may be lost even though the parties were separated prior to the acts charged as alienation. Prosser, Law of Torts, 2d Ed. 682, et seq. § 103. And see Hosford v. Hosford, supra, where the Court of Appeals of Georgia quoted with approval from Heermance v. James, 47 Barb., N.Y., 120, the following:

" 'What reason can be given that should make it material that there be a technical physical separation of the parties in order to constitute a cause of action? I apprehend that the separation which occasions the real injury, the suffering, the loss, is based upon a higher principle; it is one that strikes at the source of the highest enjoyments of life; it is alienated affections, the loss of comfort, of fellowship, society, aid and assistance in domestic affairs; the loss of conjugal rights.' " [58 Ga.App. 188, 198 S.E. 291]

In Gordon v. Parker, D.C.Mass.1949, 83 F.Supp. 40, a case was presented with a factual situation very like that which confronts us. The case is probably the only one dealing with conflict of laws on issues of liability for alienation of affections and similar causes of action. In the cited case the plaintiff husband had resided with his wife in Pennsylvania. The defendant, a resident of Massachusetts, was sued there for the alienation of the affections of the plaintiff's wife. Pennsylvania, by statute, had abolished this cause of action. Massachusetts had not. Massachusetts ad-

hered to the doctrine of determining tort liability by the law of the place where the wrong occurred. It was held that the Massachusetts law applied and the action could be maintained. A judgment for the plaintiff was affirmed but the conflict of laws· question was not presented on appeal. Parker v. Gordon, 1 Cir., 1949, 178 F.2d 888.

In the case before us the district judge, with painstaking care, instructed the jury as to the contentions of the parties as to where the cause of action accrued and commented upon the right of recovery under the laws of each of the states. The jury was charged that the cause of action accrues when there is a loss of consortium and adequately explained the meaning of "loss of consortium". The jury was told that if there was a loss of consortium occurring in Illinois then the verdict would be for the defendant, while if there was a loss of consortium occurring in Georgia then there might be a verdict for the plaintiff. No objection was made to these or any of the other instructions of the court. We cannot say, as a matter of law, that there could not have been an alienation of the affections of the plaintiff's wife in Georgia. The jury has said that there was. Its verdict forecloses the question.

The defendant complains that the district court, over his objection, admitted evidence concerning his wealth. The Legislature of Georgia has enacted the following statutory provision:

"In some torts the entire injury is to the peace, happiness, or feelings of the plaintiff; in such cases no measure of damages can be prescribed, except the enlightened conscience of impartial jurors. The worldly circumstances of the parties, the amount of bad faith in the transaction, and all the attendant facts should be weighed. The verdict of a jury in such a case should not be disturbed, unless the court should suspect bias or prejudice from its excess or its inadequacy." Ga.Code, § 105–2003.

This code section has been held applicable in a suit for breach of promise to marry. Morris v. Stanford, 58 Ga.App. 726, 199 S.E. 773. Punitive or exemplary damages have been approved in an action for criminal conversation. Davis v. Cochran, 42 Ga.App. 215, 155 S.E. 379. There is no good reason for applying different rules of evidence or damages in a criminal conversation case than in one for alienation of affections. They both represent interference with the conjugal relationship and the gist of each is the loss of consortium. See Prosser, Law of Torts, 2d Ed. 686, § 103. The evidence was properly received. The defendant urges that the size of the verdict shows that it was the result of gross mistake, bias and prejudice, and that it was grossly excessive. This assertion is unsupported. We have no cause for invading the jury's province.

There is no error disclosed. The judgment is

Affirmed.