## HOYT & Another *v.* RUSSELL.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF MONTANA.

Submitted March 11, 1886.—Decided March 22, 1886.

A Territorial Court is bound to take judicial notice of the statutes of the Territory in operation affecting a subject brought before it in the regular course of procedure.

On May 8, 1873, the Legislature of Montana enacted that any person who should thereafter discover a mining claim should file in the office of the recorder of the county a statement in some material respects different from the statement previously required by law to be filed in such case, and that the act should take effect on and after its passage. On that date a statute was in force there which provided that "all acts of the Legislature declaring that they should take effect from and after their passage shall so take effect only at the seat of government, and in other portions of the Territory, allowing fifteen miles from the seat of government for each day." On the 13th of May, 1873, at a place in the Territory in which the act of May 8, 1873, had not come into force, H & G discovered a lode, and located it, and subsequently filed a notice of location complying in all respects with the law as it was before the passage of the act of May 8, 1873, but not complying with the requirements of that act. R, who had made a conflicting location, filed an adverse claim under Rev. Stat. § 2326. On the trial, the

court refused to receive proof of the location by H & G, because they did not also prove affirmatively that the act of May 8 had not taken effect at the lode at the time of the location, by reason of its distance from the seat of government: *Held,* That the court should have taken judicial notice of the fact that that statute was not then in force there, and that it was error to exclude the evidence for the want of such proof.

The case is stated in the opinion of the court.

*Mr. William Chumasero* for plaintiffs in error submitted on his brief.

No appearance for defendant in error.

Mr. Justice Field delivered the opinion of the court.

This is an action to determine the right of the parties to the possession of certain mining ground situated in Lewis and Clark County, in the Territory of Montana. The plaintiffs in error, Hoyt and Gonn, defendants in the court below, allege that on the 13th day of May, 1873, they discovered a silver-bearing quartz lode in that county, which they named "Mammoth Lode," and then proceeded to locate it by placing stakes so as to mark its extent; and that on the 29th day of that month they filed in the recorder's office of the county a notice or declaratory statement of the location, describing the claim. In October, 1877, Gonn conveyed his interest to Mary A. Hoyt, and she subsequently filed an application for a patent in the land office at Helena, in the Territory.

Russell, the plaintiff below, the defendant in error here, also claimed a silver-bearing quartz lode in that county, which, he alleges, he and one Bassett discovered in 1867, duly located, and named "The J. H. Russell Lode." The claims of these parties—Hoyt and Russell—conflicted, and in opposition to her application he filed his adverse claim under the statute, Rev. Stat. § 2326, and in due time commenced this action, joining Gonn as a defendant with her.

The plaintiff made proof of his location. The defendants' notice of location was accompanied by an affidavit that they were citizens of the United States and of the Territory; but the other matters set forth therein were not sworn to, and for this

omission it was excluded. The action of the court on other points became of little moment in the face of this ruling; if that was correct, their proof of right to the disputed ground failed.

Their lode was located under an act of Montana of December 26, 1864, and the act of Congress of May 10, 1872. The act of Montana provided that notice of the discovery of any lead, lode, or ledge should be filed for record in the office of the recorder of the county in which the same was situated, within fifteen days from the date of discovery, and that at the same time an oath should be taken before the recorder that all the claimants were *bona fide* residents of the Territory. Session Laws of Montana of 1864, page 328. The act of Congress does not require an affidavit. It merely prescribes that the record, subsequently made, where one is required by the regulations of the mining district, shall contain the names of the locators, the date of the location, and such a description, by reference to some natural object or permanent monument, as will identify the claim. Rev. Stat. § 2324. By an act of the Legislature of Montana, passed on the 8th of May, 1873, it was provided that any person who should *thereafter* discover a mining claim upon any vein or lode bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposits, should, within twenty days after the discovery, file for record in the office of the recorder of the county a declaratory statement thereof in writing, on oath, before some person authorized by law to administer oaths, describing such claim in the manner provided by the laws of the United States. Extra Session of 1873, 84.

Another act then in force provided that all acts and joint resolutions, declaring that they should take effect from and after their passage and approval by the governor, should so take effect only at the seat of government and in other portions of the Territory, allowing fifteen miles from the seat of government for each day. Rev. Stat. Montana, § 785. That seat was then at Virginia, in Madison County. The pleadings admit that the ground in controversy is situated in Lewis and Clark County, and in Township No. 8 North, Range 5 West; but there was no evidence as to its distance from Virginia. It

was contended that the court should have taken judicial notice of the distance and declared that the ground was so far distant that the act of May 8, 1873, was not in force there at the time of the discovery of the lode and its location. But the court replied that while courts would take judicial notice of what is generally known within the limits of their jurisdiction; of the divisions of a State or Territory into towns or counties; of the leading geographical features of the land; of the positions of important cities and towns and of government surveys of the public lands, no principle or authority authorized or required them to take judicial notice of the place where mere private property was situated, or its distance from the seat of government; that matters only of public importance and notoriety were within the scope of what courts will take judicial notice of; and that matters of mere private concern, as the location or situation of a farm or a mining claim, or its distance from the seat of government, were not within the operation of the principle.

It is undoubtedly true that judicial notice is not taken of purely private concerns, when they are not connected with or necessarily involved in a matter of a public nature; but it is otherwise when they are so connected or involved. For example, a court will take notice of the boundaries of the State or Territory where it holds its sessions, and of judicial districts, and municipal subdivisions within it. If the public surveys have established the distance from its capital to any such subdivision, the court will take notice of the fact, and if private property be shown to be within that subdivision, its distance also from the capital will be judicially noticed—notice of the general fact embracing all the facts included in it. In the present case, the court below was required to take notice of the extent of its jurisdiction, not only of the subjects placed by law under its cognizance, but of its extent territorially. It should have known judicially whether the laws of the Territory, which it was appointed to expound, were in operation with reference to a subject brought before it in the regular course of procedure. It was bound to know whether they were in force in the township designated in the county of Lewis and Clark on the 13th-

day of May, 1873, and that necessarily involved a knowledge of its distance from the capital of the Territory. It may be that the judge's information on the subject was at fault, and calculations and inquiries on the subject may have been necessary. Such is the case with reference to a great variety of subjects of general concern, of which courts are required to take judicial notice. Information to guide their judgment may be obtained by resort to original documents in the public archives or to books of history or science or to any other proper source. In this case, it appears by the government maps of the Territory, upon which the public surveys are marked, that the distance from the seat of government to the nearest point of the township in which the mining ground in controversy is situated exceeds seventy-five miles. The act of May 8, 1873, was not, therefore, in force there on the 13th of May, the day of the discovery of the "Mammoth lode." The court having become informed on this subject, should have so declared, and its conclusion would not have been open to contest before the jury. It erred, therefore, in excluding the notice of the defendants' location for the omission stated, because no proof was offered of the distance of the disputed ground from the seat of government, where the act took effect on the day of its passage. The court said that if there were any exception to it by reason of the distance of the Mammoth lode from that place, the defendants should have made the fact appear by proof, holding that the act not having been complied with, the notice was inadmissible in evidence.

It is not necessary to express any opinion whether, after the passage of the act of Congress of 1872, the legislature of the Territory could add any further requirement touching the record of notices of location. It is sufficient for the reversal of the judgment that the court required proof of a fact of which it was bound to take judicial notice.

*Judgment reversed, and cause remanded for a new trial.*