## GORDON v. PARKER.

### Civ. No. 7541.

United States District Court
D. Massachusetts.

Jan. 31, 1949,

See also 83 F.Supp. 43.

Willis A. Downs, of Boston, Mass., for plaintiff.

Allan Roy Kingston, of Somerville, Mass., for defendant.

WYZANSKI, District Judge.

Plaintiff and his wife Naomi are citizens of and domiciled in Pennsylvania. During his service as Lt. Colonel in India, she came to Massachusetts and met defendant who is a citizen and domiciliary of Massachusetts. Plaintiff's complaint alleges that defendant, intending "to deprive him of the comfort, society, aid and assistance of Naomi", enticed her to continue absent from his home (Par. II) and "debauched and carnally knew the plaintiff's said wife" (Par. III). The parties have stipulated "that the alleged acts upon which the plaintiff is bringing this action are alleged to have been committed in * * * Massachusetts".

Defendant moves for summary judgment on the basis of Pa. Act of June 22, 1935, Pamphlet Law 450, as amended by Pa. Act of June 25, 1937, Pamphlet Law 2317, 48 P.S. Pa. § 170 et seq., which, so far as material, provides:

§ 170—" * * * all civil causes of action for alienation of affections of husband or wife * * * are hereby abolished * * *."

§ 172—"No act hereafter done within this Commonwealth shall operate to give rise, either within or without this Commonwealth, to any of the causes of action abolished by this act. * * * It is the intention of this section to fix the effect, status, and character of such acts * * * and to render them ineffective to support or give rise to any such causes of action within or without this Commonwealth."

Since this is an action brought in this Court solely by virtue of the diversity jurisdiction statute, 28 U.S.C.A. § 1332(a) (1), this Court must apply the law of Massachusetts, including its rules of conflict of laws. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496-497, 61 S.Ct. 1020, 85 L.Ed. 1477.

The complaint could be construed as setting forth a single cause of action for alienation of affections. Under this construction the reference to carnal knowledge would be "not the gist of the cause of action set forth and relied on, but a mere inducement to the allegation of alienation of affec-

tions upon which the claim of recovery was based." McGrath v. Sullivan, 303 Mass. 327, 329, 21 N.E.2d 533, 535. But, as the McGrath case also teaches, it is equally possible to adopt an alternative construction of the complaint under which causes of action for both criminal conversation and alienation of affections are presented. Bigaouette v. Paulet, 134 Mass. 123, 126, 45 Am.Rep. 307.

Since no evidence has been taken as yet, I shall dispose of the present motion upon the basis of the second view. However, to promote a more orderly trial, I direct that within one week after the filing of this opinion plaintiff amend his complaint so as to present clearly to the trier of fact in two different counts the causes of action on which he relies. Federal Rules of Civil Procedure, rule 15(a), 28 U.S.C.A. See also Rule 10(b).

■ There is no conflict of laws problem connected with the cause of action for criminal conversation. In Pennsylvania as in Massachusetts there has long existed a common law action against a defendant who has sexual intercourse with a woman without her husband's consent. Matusak v. Kulczewski, 295 Pa. 208, 145 A. 94, 68 A.L. R. 557; Matheis v. Mazet, 164 Pa. 580, 30 A. 434; McGrath v. Sullivan, supra. The Pennsylvania Acts of June 22, 1935 and June 25, 1937 do not abolish or modify that cause of action. See 85 U. of Pa. L. Rev. 110, 111; 11 Temple L. Qu. 396, 399 n. 33. But see contra Daily v. Parker, D.C.N.D. Ill., 61 F.Supp. 701, 702.

With respect to an action for alienation of affections there is a difference between the two Commonwealths. Massachusetts has retained in modified form the husband's common law right to hold liable a defendant who has induced his wife to deprive him of her consortium. But Pennsylvania has enacted that in that state all actions for alienation of affections are abolished and that no act within Pennsylvania shall give rise to an action for alienation of affections. The question is whether Massachusetts would extend the asserted underlying policy of the Pennsylvania statute to bar a suit brought in the courts of Massa-

chusetts by a Pennsylvania husband against a Massachusetts paramour on account of conduct within Massachusetts.

In the literal sense of the phrase this is not a question of "conflict of laws". For though Pennsylvania has a law governing suits in her courts and conduct within her borders, she has no law purporting to regulate her domiciliaries' right to bring actions in other states based on conduct outside Pennsylvania. Yet, because of the somewhat divergent policies of the different states whose interests are involved, the problem is one which would properly be called one of private international law. Cheshire, Private International Law (3rd ed.), pp. 5, 6.

■ Like most other American states, Restatement, Conflict of Laws, § 378; Western Union Tel. Co. v. Brown, 234 U.S. 542, 547, 34 S.Ct. 955, 58 L.Ed. 1457; Loucks v. Standard Oil Co. of N.Y., 224 N.Y. 99, 106, 120 N.E. 198, Massachusetts generally applies the law of the state where an alleged wrong has occurred in deciding whether a person has sustained a legal injury. Walsh v. New York & N. E. Railroad Co., 160 Mass. 571, 36 N.E. 584, 39 Am.St.Rep. 514; Strogoff v. Motor Sales Co., Inc., 302 Mass. 345, 347, 18 N.E.2d 1016; Smith v. Brown, 302 Mass. 432, 433, 19 N.E.2d 732; Murphy v. Smith, 307 Mass. 64, 65, 29 N.E.2d 726; Peterson v. Boston & Maine Railroad, 310 Mass. 45, 47, 36 N.E.2d 701. However, these and other Massachusetts cases have dealt with the type of injuries to body and mind caused by the negligent or wilful misconduct of persons such as employers, fellow servants and automobile drivers. There appears to be no conflict of laws case dealing with injury to consortium, or to any other marital relationship, or even to a contractual relationship or other advantageous business relationship. But cf. Mandell Brothers v. Fogg, 182 Mass. 582, 583, 66 N.E. 18, 17 L.R.A.N.S., 426, 94 Am.St. Rep. 667.

Defendant's argument is that where the asserted damage has been inflicted on a marital relationship Massachusetts would recognize that the existence of liability should be determined by the policy not of

the forum, or of the place of wrong, but of the state of marital domicil. Cf. Rheinstein, Michigan Legal Studies: A Review, 41 Mich. L. Rev. 83, 89-98; Harper, Policy Bases of the Conflict of Laws, 56 Yale L. J. 1155; Freund, Book Review, 61 Harv. L. Rev. 1264, 1265; Comment, Functional Application of Conflict of Laws Rules in Tort Cases, 44 Yale L. J. 1233. It is there, so the contention runs, that the alienator's act has its chief and indeed its final legal consequences. Cf. Comment to Restatement, Conflict of Laws, § 377. That is the state that has the most sustained and profound interest in the marriage. If it does not give the husband a legal interest in protecting his wife's affections and consortium from strangers, no other state should. Cf. Lister v. McAnulty, 3 D.L.R. 673, 58 Harv. L. Rev. 878. To do so amounts to conferring upon the husband a property right in his wife's affections to which he would not be entitled at the seat of the marriage. And it is virtually to impose a restriction upon the freedom which the wife enjoys at home. [But see Dicey, Conflict of Laws, (5th ed.) p. 549.]

There are, it seems to me, sufficient reasons for believing that Massachusetts would reject these arguments as applied to this case.

This is not a situation in which the interests of Pennsylvania plainly outweigh those of Massachusetts. The social order of each is implicated. As the place of matrimonial domicil, Pennsylvania has an interest in whether conduct in any part of the world is held to affect adversely the marriage relationship between its domiciliaries. But, as the place where the alleged misconduct occurred and as the place where the alleged wrongdoer lives, Massachusetts also has an interest. She is concerned with conduct within her borders which in her view lowers the standards of the community where they occur. She also is concerned when her citizens intermeddle with other people's marriages. But admittedly she has little interest in the degree of affection one Pennsylvania spouse has for another. It so happens that this distinction in interest finds a parallel in the substantive law of Massachusetts. For under her rules a defendant is liable for alienation of affections only if his conduct produces physical results—either adultery or separation. McGrath v. Sullivan, supra. Massachusetts does not hold a defendant liable when all that is involved are emotional upsets in a domestic or foreign marriage and the decreased loyalty of domestic or foreign spouses. Longe v. Saunders, 246 Mass. 159, 140 N.E. 741.

If the choice between Pennsylvania's interests and Massachusetts' interests presented in the case at bar were laid before a Massachusetts court, it seems to me probably that it would strike a balance in favor of its own Commonwealth. It could point out that the interests of Massachusetts were perhaps the most fundamental ones in the development certainly of tort law and perhaps of all private law. Tort law, like its younger brother criminal law, was sired by a policy of regulating the social order and substituting legal process for self-help. Maine, Ancient Law, Pollock Ed., 12th Ed., p. 391. To be sure, tort law also always has a compensatory element. But that is of secondary consequence where, as in the tort of alienation of affections, the principal reason why the state stamps conduct as wrongful is that so many people regard it as sinful, so many regard it as offensive to public morals, and so many are likely to take matters into their own hands if public tribunals are not available. Cf. 2 Rabel, The Conflict of Laws, A Comparative Study, 252.

Moreover, departures from the territorial view of torts ought not to be lightly undertaken. There was a time in Anglo-American history when persons from abroad did not have the full benefit or burden of local private law. Thus, foreign merchants in England in the Fifteenth Century were "not bound to sue according to the law of the land * * * but * * * the matter shall be determined by the law of nature". Y.B. 13 Edw. III f. 9, Pasch. pl. 5, quoted in 2 Pollock & Maitland, History of English Law, 1st Ed., 449. 9 Holdsworth, History of English Law, 95, n. 4. However, it was regarded as an advance when "by the end of the Sixteenth Century, the alien could bring personal actions * * * just as a subject". 9 Holdsworth, supra, p. 97. It is, therefore, not necessarily a for-

ward step for courts now to adopt a doctrine that in all matrimonial tort cases the right to maintain a suit against a local defendant on account of local conduct turns on the matrimonial domicil of the plaintiff. To be sure, technically this will not reintroduce a doctrine of personal disability. For the doctrine will make the applicable rule depend not on the person of the plaintiff or his lack of local citizenship, but on a relationship involving him, his foreign spouse and his foreign state. Yet the lay plaintiff will regard the distinction as involving a personal discrimination against him rather than as a step toward comity between states. This would be particularly true if the rule should be applied to a plaintiff who was formally domiciled in one state but who spent most of his time with his wife in the state where the misconduct occurred.

Furthermore, up to now I have assumed what is by no means clear, that the present case involves some implied Pennsylvania policy. So far as appears, Pennsylvania has no general policy that injured spouses should bear their suffering in silence and rely exclusively upon the forces of social ostracism and religious discipline. Pennsylvania was concerned with not having Pennsylvania courts hear this sordid type of controversy and not having Pennsylvania citizens and visitors called upon to defend actions which have so often been motivated by spiteful or ulterior purposes. That is, Pennsylvania has spoken qua possible forum and qua possible state of defendant's domicil, but not qua state of matrimonial domicil. In any event, its policy is not connected with the purification of Massachusetts courts or the immunization of Massachusetts defendants who have been acting illicitly in Massachusetts.

My conclusion finds some support in a decision of the Swiss Federal Court which held that where the wrong occurred in Switzerland, a plaintiff, subject of and domiciled in Denmark, could bring an action in Switzerland for disruption of marriage, despite the contrary Danish law. B.G., June 15, 1917, 43, B.G.E. II 309, 317 cited by 2 Rabel, supra, p. 249.

Motion for summary judgment denied; plaintiff to amend complaint as directed.