**Helen MARRA**

v.

**Esther BUSHEE.**

**Civ. A. No. 5665.**

United States District Court,
D. Vermont.

Sept. 14, 1970.

John T. Conley, and John C. Deppman, Conley & Foote, Middlebury, Vt., for plaintiff.

John A. Dooley, III, Burlington, Vt., Joseph Goldberg, Grand Forks, N. D., and W. Averell Brown, Bennington, Vt., Vermont Legal Aid, Inc., for defendant.

## OPINION AND ORDER

LEDDY, Chief Judge.

This is an alienation of affections and criminal conversation case. Trial was by jury and on June 19, 1970, a verdict was returned for the plaintiff in the sum of nine thousand (9,000) dollars. At the close of the plaintiff's case, defendant moved for a directed verdict on the ground that under the applicable conflicts of law rule of the State of Vermont, the law of New York governs this cause of action and New York has abolished the cause of action of alienation of affections and criminal conversation. The motion was held in abeyance. On June 29, 1970, the defendant filed a motion for a judgment notwithstanding the verdict and a motion for a new trial.

The gravamen of the motion for a judgment notwithstanding the verdict is the same as the previous motion for a directed verdict. First, I shall consider this motion and then the motion for a new trial.

Defendant's motion for a judgment notwithstanding the verdict involves several choice of law questions which may be grouped into two basic contentions.

First, the defendant maintains that under the traditional *lex loci delecti* test the court must look to the law of the place of the injury which, according to the defendant, is New York.

Second, the defendant contends that the modern *significant relationship* test adopted by the Vermont Supreme Court for application to contractual choice of law problems should also be used in the case of an intentional tort; and, that New York is the state with the most significant relationship to the present causes of action.

Although this court is inclined to agree with the defendant that the Vermont Supreme Court would follow the modern test, set out in Restatement 2d, Conflict of Laws § 154 (Proposed Draft, Part II 1968), the problem is academic because under either of the two conflicts tests, Vermont law applies.

## I. *The Lex Loci Delecti Test*

The traditional conflicts test, incorporated into the First Restatement, was that the law of the state where the wrong occurred governed the cause of action. The place of the wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place. Restatement of the Law of Conflict of Laws § 377 (1934). In such a case, the last link in the chain of liability is the place where the injury was sustained. Defendant contends that if the traditional test is applied, this court should look to the place of the injury to determine whether or not the plaintiff has a cause

of action for the intentional torts of alienation of affection and criminal conversation. Defendant further contends that because the injury is loss of consortium, the locus of the injury is the domicile of the plaintiff and the marital domicile, that is New York.

The first of these two contentions is based on the traditional Restatement view which looks to the place of the injury in a multistate tort situation. In 1960, the Supreme Court of Vermont adopted the "place of the injury" conflicts test in the context of a negligent tort. Goldman v. Beaudry, 122 Vt. 299, 301, 170 A.2d 636 (1961). Without disturbing the law contained in *Goldman*, there is strong indication that considerations apart from the "place of injury" govern choice of law problems when certain types of intentional torts are involved. Although the Restatement *may* suggest otherwise, "[A]merican courts have always given, * * * preference to the law of the *place of conduct* over that of the place of harm, if the former (though not the latter) renders the defendant liable for an intentional tort." Ehrenzweig, The Place of Acting in Intentional Multistate Torts: Law and Reason Versus the Restatement, 36 Minn.L.Rev. 1, 5 (1951). (Emphasis added.) Ehrenzweig strenuously contends that there is a distinction for conflicts purposes between negligent torts which are primarily compensatory in character and properly subject to the place of the harm rule, and intentional torts, such as alienation of affections, which are primarily admonitory in character, closely related to the criminal sanction, requiring the application of the laws of the state in which the wrongful conduct has occurred. See Ehrenzweig *supra* and cases cited therein.

The case of Gordon v. Parker, 83 F. Supp. 40 (D.Mass.), aff'd on other grounds, 178 F.2d 888 (1st Cir. 1949) offers a good illustration of this distinction. In *Gordon*,

A domiciliary of Pennsylvania sued in the federal court in Massachusetts for the alienation of his wife's affections by acts committed in the state of the forum. Defendant moved for a summary judgment under a Pennsylvania statute barring actions of this type and alleged to be applicable as the law of the place where the defendant's act had its chief and indeed its final consequences.

36 U.Minn.L.Rev. 1, 3 (1951). Judge Wyzanski denied the defendant's motion, holding the law of Massachusetts applicable as the law of the state in which the defendant's conduct had concededly occurred.

He concluded that the major justification for the place of the harm rule is the protection of the compensatory element which buttresses a state's designation of negligence as "wrongful conduct". When this compensatory element is dominant as it is in the ordinary negligence action, the place of the harm rule is appropriate. However, when compensation is a secondary factor and the punitive element is dominant, a state finds conduct wrongful because its people regard it as sinful or offensive to public morals, and the conduct, not the injury, is critical for purposes of applying the applicable law. See Wawrzin v. Rosenberg, 12 F.Supp. 548, 549 (E.D.N.Y.1935). (A New York statute barring actions for alienation of affections did not prevent the bringing of such an action in a New York federal court if " * * * the wrongful acts of the defendant were committed within the state of New Jersey * * *.") Id. at 549.

Even if the "place of injury" is the touchstone for the tort of alienation of affections under the traditional rule, the law of Vermont would still be applied, because for the purposes of this tort Vermont is the "place of the injury". Section 377 of the first Restatement of the Law of Conflict of Laws posits the place of wrong in the state where the last event necessary to make an actor liable for an alleged tort takes place. The Restatement does not distinguish between negligent compensatory torts and intentional punitive torts in applying the place of harm rule, but it does

conceptualize the place of the harm differently depending on the type of injury inflicted. The defendants in this case contend that without regard to where the wrongful acts occurred, the injury must be located in the state where the plaintiff and the matrimonial domicile were located when the alienation took place. If the injury to the consortium of the plaintiff was analagous to an injury against his person, the defendants contention would be sound. See Restatement of the Law of Conflict of Laws § 377 Note 1 (1935). If, however, injury to consortium is conceptually similar to an injury inflicted on things or chattels, then the place of harm is the place where the force takes effect on the thing injured. See Restatement of the Law of Conflict of Laws § 377 Note 3 (1934). When this latter concept applies, both *wrongful conduct* and *harm* can quite regularly be localized at the situs of the thing injured. A good illustration of this point is found in Section 415, comment (b) of the Restatement where, in dealing with conversion, identity between the place of the harm and the place of the wrongful conduct is assumed. Restatement, Conflict of Laws § 415, Comment (b) (1934). See also, Ehrenzweig, *supra* at 35.

Conceptualizing the locus of consortium, when it is injured is more difficult than positing the situs of personal injury, or injury to chattel. Consortium involves feelings and emotions which flow between two persons. Although it may be the husband's right to retain the consortium of his wife, it does not follow that the injury is inflicted at the situs of his person or the situs of the marriage when this consortium is damaged or cut off. On the contrary, it appears that the traditional conflicts test placed the situs of the injury with the wife or husband who was lured away. The 1928 Tentative Draft of the Restatement contained a specific provision governing the conflict of laws test applicable when rights incidental to relative status were injured. Relative status was defined as "* * * a relation in which

one person has a legally recognized interest in another person." Restatement No. 4, Conflict of Laws § 406, Comment (a) (Tentative Draft, 1928). The rule stated that:

> Section 406. Rights incidental to relative status are determined by the law of that state where the person in whom the right is asserted is at the time when the right is alleged to have been violated.

Restatement No. 4, Conflict of Laws § 406 (Tentative Draft 1928). Illustration (b) accompanying Tentative Section 406 gave an example solution to·an alienation of affections conflicts problem:

> (b) A, domiciled in state X, has a wife B. While B is visiting C, her mother, in state Y, C persuades B to leave A. Whether A has a cause of action against C depends on the law of Y.

Restatement No. 4, Conflict of Laws § 406, Comment (a), Illustration (b) (Tentative Draft 1928). Professor Beale notes in his commentaries on the Tentative Draft above that: "Rights incidental to relative status are created by the law of the state where the person is whose status is concerned." Restatement No. 4, Conflict of Laws, Beale's Commentaries § 405 (Tentative Draft 1928). So also whether the husband has a right of action against one who entices his wife from him, or a father has a right to defend the child against attack, depends upon the law of the state where the wife or child is at the time. Restatement No. 4, Conflict of Laws, Beale's Commentaries § 405 (Tentative Draft 1928). Section 406 was not included in the Official Draft of the Restatement presumably because it was felt that the general place of the harm rule covered the various specific rules contained in the tentative draft. See the discussion of the No. 4 tentative draft in A.L.I. Proceedings, Vol. VI at 454–478 (1928) and A.L.I. Proceedings Vol. XI at 410–475 (1934). Although the traditional rule is less than clear in a case of this nature, it appears that consortium is properly recognized as

being a right of the *plaintiff* spouse, but a right which is carried by the person of the spouse who is enticed away.[1] Support for this view of "injury" in an alienation of affections case is found in Albert v. McGrath, 107 U.S. App.D.C. 336, 278 F.2d 16 (1960), and Orr v. Sasseman, 239 F.2d 182 (5th Cir. 1956).

In *Orr*, the plaintiff husband and his wife were residents of Illinois. They spent the 1954 Christmas holidays with the wife's parents in Atlanta, Georgia. The defendant was introduced to the plaintiff and his wife shortly after their arrival in Atlanta. On or about January 1, 1955, the plaintiff returned to Illinois. The plaintiff's wife remained in Georgia until February 5, 1955. The jury in the trial court found that during the period from January 1, 1955 to February 5, 1955, the defendant alienated the affections of the plaintiff's wife. The wife returned to Illinois on February 5, where she had subsequent contacts with the defendant.

■ The Illinois law on alienation of affections limited the recovery to actual damages. There was no such limitation under Georgia law. The defendant contended in *Orr* that Illinois law should apply because the evidence was insufficient to establish an alienation before February 5, 1955, and that no legal rights were violated until the wife returned to Illinois. The dispute in the case centered on where the *wife* was when the affections were alienated, not where the plaintiff husband was when the harm occurred. Judge Jones suggests that if the alienation took place before. February 5, 1955, as the jury found it did, then it could not have occurred in Illinois because the defendant had not been " * * * in the company of the *plaintiff's wife* in the state as of that date." 239 F.2d at 185 (1956). Although the plaintiff was in Georgia

until January 1, 1955, it was not contended by either party at the trial that the alienation occurred before January 1, 1955, while the husband was in Georgia. Indeed the defendant contended that the plaintiff's wife returned from Georgia with her affection for her husband intact. Id. at 185. Both the trial court and the Circuit Court found the place of the injury to be with the wife and the law of Georgia was applied when the jury found that the injury occurred while the wife was in Georgia, and not after she returned to Illinois. I am satisfied that under the traditional "place of the injury" test the locus of the harm in the tort of alienation of affections is the state where the alienated spouse is when the enticement occurs. *Accord,* Polydore v. Prince, 19 Fed.Cas. page 950, No.11,257, 1 Ware 402 (1837).

In summary, then, the traditional *lex loci delecti* rule points to Vermont for two ·reasons: (1) assuming that the place of injury controls as a general rule, the place of conduct controls in the context of an intentional tort when the punitive element of the tort is dominant and the place of conduct renders the defendant liable while the place of injury does not: (2) even if the distinction above is not adhered to, the place of the injury would be the place of the conduct (Vermont) in this case because consortium follows the alienated spouse through whom it is claimed and not the plaintiff.

## II.  *The Significant Interest Test*

The defendant's second contention is that the Vermont Supreme Court would now follow the modern "significant interests" test set forth in the draft of Restatement 2d Conflict of Laws and that under the modern test, New York law would apply. The defendant bases

---

1. As already noted, Ehrenzweig would apply the law of the place of the *conduct* and not the place of the harm in this situation. However, he does not agree that the Restatement finds conduct and harm at the same locus when the tort is alienation of affections. See Ehrenzweig, The Place of Acting in Intentional Multistate Torts: Law and Reason Versus the Restatement, 36 Minn.L.Rev. 1, 3–5 (1951).

the first part of this contention on the fact that the Vermont Supreme Court has recently applied a section of the 2d Restatement to the resolution· of a conflict of laws problem in the context of contractual rights. See Pioneer Credit Corp. v. Carden, 127 Vt. 229, 233, 245 A.2d 891 (1968).

This Court need not decide whether the Vermont Supreme Court would abandon the traditional test enunciated in Goldman v. Beaudry, 122 Vt. 299, 301, 170 A.2d 636 (1961) in favor of the Restatement 2d approach because under either test Vermont law controls the existence of the cause of action.

The Restatement 2d test is stated in Section 154—Interference with Marriage Relationship. The section provides that:

> The local law of the state where the conduct complained of principally occurred determines the liability of one who interferes with a marriage relationship, unless, with respect to the particular issue, another state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement 2d, Conflict of Laws § 154 (Proposed Official Draft 1968). Comment (b) to section 154 provides:

> b. *Rationale.* The rule of this Section calls for application of the local law of the state where the defendant's conduct principally occurred unless, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties. Whether there is such another state should be determined in the light of the choice of law principles stated in § 6. In large part, the answer to the question will depend upon whether some other state has a greater interest in the determination of the particular issue than the state where the defendant's conduct principally occurred. The extent of the interest of each of the potentially interested states should be determined on the basis, among other things, of

the purpose sought to be achieved by their relevant local law rules and of the particular issues involved (see § 145, Comments c–d). Particular issues are discussed in Title C (§§ 156–174). The likelihood that some state other than that where the defendant's conduct principally occurred is the state of most significant relationship is greater in those relatively rare situations where the state of the defendant's conduct bears little relation to the occurrence and the parties.

> The rule furthers the choice of law values of application of the local law of the state of dominant interest, of certainty, predictability and uniformity of result and of ease in the determination and application of the applicable law (see § 6). The first-mentioned value is furthered by the rule, since the basic purpose of tort rules imposing liability for interference with a marriage relationship is not so much to compensate the plaintiff for his loss as to punish the defendant *and thus to deter others from following his example* (see § 145, Comment c).

Restatement 2d, Conflict of Laws § 154, Comment (b) (Proposed Official· Draft 1968). Comment (d) provides:

> d. *Determination of the applicable law.* Usually, the defendant's conduct will occur in a single state and will have its immediate impact upon the spouse involved in the same state. In such situations, the local law of this state will usually be applied to determine most issues involving the tort (see § 145, Comments d–e and §§ 156–166 and 172).

> On occasion, defendant's conduct will occur in two or more states, as when his travels take him across state lines during the course of his campaign to alienate the affections of plaintiff's wife. Here, the location of the defendant's conduct is not as important a contact as it would have been if all of the conduct had occurred in a single state. Nevertheless, the principal location of the defendant's conduct is

the most important of all contacts in situations where. this conduct can be assigned a principal location.

Restatement 2d, Conflict of Laws § 154, Comment (d) (Proposed Original Draft 1968).

In the present case, the matrimonial domicile is New York. However, it is the state where the defendant acts or principally acts which has the dominant interest, since the basic purpose of the tort rule dealt with here is to punish the defendant and thus deter others from following his example. See Restatement 2d, Conflict of Laws § 154, Comment (c) (1968).[2]

■■ For the purpose of this case, I find that the defendant has resided in Manchester, Vermont, since August, 1968, or before. In early September, 1968, the defendant met the plaintiff's husband in a bar in Granville, New York, and shortly thereafter, the husband went to live with the defendant at her home in Manchester and was employed in Vermont. While it was customary for the defendant and the husband to visit bars in Granville, New York, on Saturday nights, this was incidental to the conduct of the husband and defendant in Manchester, and I find that the conduct which constituted the alienation occurred principally in Vermont and the applicable law is Vermont law.[3]

The defendant, however, raises several issues in his motion for a new trial.

## ERROR IN THE CHARGE

One of the grounds for the motion for a new trial is that this Court erred in charging that " * * * this is the only opportunity afforded to the plaintiff to recover damages * * *." It is the position of the defendant that this portion of the charge was clearly erroneous because part of the defense was that

others had alienated the affections of the plaintiff's spouse. Therefore, the jury might well include in its verdict damages that may be due from other possible defendants.

· In Callaghan v. A. Lague Express, 298 F.2d 349 (2d Cir. 1962) the court held a somewhat similar charge erroneous. In the lower court the jury was told "this is the only opportunity for the plaintiff to have a jury decide her damages." 298 F.2d at 351. However, there the defense was that the automobile accident was caused by the driver of the automobile in which plaintiff was a passenger and not by the defendant. The court reasoned that the charge in effect took away this defense because the jury was told plaintiff would never have a cause of action against the driver of the automobile in which plaintiff was a passenger.

In the case at bar, a different situation exists. Here there was no request to so charge although this portion of the charge was properly excepted to. More importantly, there was no evidence that any other person would, or could be responsible to the plaintiff. There was also no claim by the defendant that others had alienated plaintiff's spouse's affections. Lastly, there was nothing to indicate, even if there were another possible defendant, that at time of trial an action could have been brought against such person.

■ There was some evidence that the husband, Allen Marra, had lived for a period of time with one Virginia Lawler shortly after 1956, and that he had later lived with a Rose Pope in Granville, New York. No action could be brought against Rose Pope for alienation of affections and criminal conversation because these actions have been abolished in New York for many years. There was no evidence as to the present existence or residence of Virginia Lawler and

2. See Conway v. Ogier, 115 Ohio App. 251, 184 N.E.2d 681 (1961).

3. This finding is not one entitled to be made by a jury since it deals with es-

sentially a jurisdictional preliminary matter, i. e. whether the plaintiff had a cause of action. See 5 J. Moore, Federal Practice ¶ 38.36 at 290–293 and ¶ 52.08 at 2738 (1969).

the facts strongly indicate that if such action did exist against Virginia Lawler, the remedy would have been extinguished by the statute of limitations. Because of these factors, the rule of the *Callaghan* case does not apply and this ground for the motion is denied.

■ Another ground relied upon by defendant was that the failure of this Court to allow defendant to make objections to the charge out of the presence of the jury was erroneous. Rule 51 of the Federal Rules of Civil Procedure provides in part: "Opportunity shall be given to make the objection [to the charge] out of the hearing of the jury." Upon conclusion of the charge, counsel for the plaintiff indicated from the plaintiff's table in the presence of the jury that he had no objections. Thereupon, counsel for the defendant approached the bench and requested that the jury be excused while he gave his objections. This request was denied and defendant's attorney proceeded to make his objections known to the Court.

Rule 51 only requires that opportunity be given to make objections out of the *hearing of the jury.* There is no indication that the jury heard or could have heard defendant's objections at the bench. Furthermore,

> [F]ailure of the court to take the initiative in setting the stage for receipt of objections to the charge, however, is not reversible error in the absence of prejudice.

Swift v. Southern Railway Co., 307 F.2d 315, 320–321 (7th Cir. 1962).

In Swain v. Boeing Airplane Co., 337 F.2d 940 (2d Cir. 1964), the trial judge asked if there were any objections upon completion of the charge. Appellant's counsel indicated they wished to discuss the matter at the bench. However, the court denied this request. Thereupon, counsel made his objections in the full presence of the jury. The Court of Appeals speaking through Judge Friendly concluded that the trial court had effectively denied counsel the opportunity to make objections out of the hearing of the

jury. However, even on these facts the Court of Appeals found that any error was harmless and no ground for reversal existed.

Comparing the instant case with *Swain,* it is obvious that the facts in *Swain* are more drastic. In the case at bar, counsel did make objections at the bench in lowered tones which were inaudible to the jury.

■ The defendant also asserts that she was prejudiced by having the attorney for the plaintiff announce to the Court and jury that he had no objection. This, argues the defendant, put the jury on notice that the only objections being made at the bench were those of the defendant. Even assuming this practice to be erroneous, it still, under *Swain,* would be considered harmless error. See 28 U.S.C.A. § 2111 (1959). Furthermore, in Lamber v. Duzy, 286 F. Supp. 670 (E.D.Pa.1968) the Court held that an inquiry by the trial judge as to whether or not there were any objections in the presence and hearing of the jury was not covered by Rule 51, since it was only preliminary and for the Court's own knowledge.

Accordingly, the motion based on this ground is denied.

■ The defendant next asserts that the Court erred in its charge to the jury by using the "substantial factor" test instead of the "controlling cause" rule. Thus, counsel argues that in Vermont a defendant may not be liable in an alienation of affections action unless the conduct of the defendant is the "controlling cause" of the loss of consortium. The defendant has cited the correct test. See Hedman v. Siegriest, 127 Vt. 291, 248 A.2d 685 (1968) and Woodhouse v. Woodhouse, 99 Vt. 91, 113, 130 A. 758 (1925). However, counsel for the defendant is under a misapprehension of what was actually charged. The Court stated:

> There are four principal elements which the plaintiff must prove in order to establish that the defendant committed the tort of alienation of

affections. * * * (4) [T]hat the defendant's conduct was the controlling cause of the loss complained of.

Later, the Court explained this test to mean:

The fourth element places on the plaintiff the burden of showing that the defendant's conduct was a controlling cause of the alleged alienation. It is not necessary that her acts be the sole cause of the loss, but there is no liability unless the defendant's conduct was a substantial factor in causing the loss.

In *Woodhouse*, the Vermont Supreme Court explained that controlling cause does not mean the "sole cause". From the record, it appears that there is no error.

■ Lastly, defendant argues that the charge on criminal conversation was erroneous. The Court instructed the jury on this important claim as follows:

The cause of action for criminal conversation has but one element. The plaintiff must prove that the defendant had sexual intercourse with the plaintiff's husband. The act in this case may be proven by circumstantial evidence. If the plaintiff has proved an adulterous disposition between the defendant and the plaintiff's husband, and an opportunity to commit the act has been shown, criminal conversation can be inferred. The inference is not mandatory, however, and the circumstances must be such as would lead the guarded discretion of a reasonable and just man to the conclusion that the act was committed.

This is in accord with Vermont law. See Shastany v. Weeks, 113 Vt. 363, 34 A.2d 174 (1943) and Taft v. Taft, 80 Vt. 256, 67 A. 703 (1907).

## ORDER

It is hereby ordered, based on the above, that defendant's motions for a judgment notwithstanding the verdict and for a new trial be and the same hereby are denied.