Helen **MARRA**, Plaintiff-Appellee,

v.

Esther **BUSHEE**, Defendant-Appellant.

No. 885, Docket 35807.

United States Court of Appeals,
Second Circuit.

Argued June 4, 1971.

Decided Sept. 7, 1971.

John A. Dooley, III, Burlington, Vt., Vermont Legal Aid, Inc. (W. Averell Brown, Bernington, Vt. and Joseph Goldberg, Vermont Legal Aid, Inc., on the brief), for appellant.

Ralph Foote, Conley & Foote, Middlebury, for appellee.

Before CLARK, Associate Justice,* and SMITH and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge.

Helen Marra, a resident of New York, brought this diversity action in the District Court for the District of Vermont against appellant Esther Bushee, a Vermont resident, to recover for the loss of consortium resulting from appellant's alienation of the affections of and criminal conversation with Allan Marra, the plaintiff's husband. The jury found in the plaintiff's favor and awarded her some $9,000 in damages. For the reason set forth below, we reverse and remand for a new trial.

During the latter years of their marriage Allan and Helen Marra seldom shared the same home.[1] According to

---

* Sitting by designation.

1. The Marras were married September 25, 1945 in Salem, Washington County, New York and resided in that county for the years that followed. In 1956 the family moved to Connecticut. A series of repeated separations and reconciliations be-

the plaintiff's testimony, her spouse's carousing, cohabitation with other women and shifting employment took him from one locale to another, with only brief intervals of residence in her home. In July, 1968 Allan Marra returned to his wife's Granville, New York farm but left soon thereafter to take up residence in the Manchester, Vermont home of defendant Esther Bushee. During the months that followed, the defendant and the plaintiff's husband, ostensibly a boarder in the Bushee home, frequented the Granville taverns. But Allan Marra did not, as before, return to his wife.

At the close of the plaintiff's case, and again at the conclusion of all the evidence, the defendant moved for a directed verdict contending, *inter alia,* that under the applicable Vermont conflict-of-laws principle [2] the law of New York, which has abolished causes of action arising from interference with the marital relationship,[3] governed the substantive rights and liabilities of the litigants. It was the defendant's position that liability must be determined by the law of the place where the injury was incurred and that, in this instance, the loss of consortium occurred in New York, the state of the matrimonial domicile.

The district court disagreed and, after the jury's verdict, denied defendant's motions for a directed verdict and for judgment n. o. v. The court ruled that under either the *lex loci delicti* test, or the modern significant relationship test, set out in the Restatement (Second) Conflict of Laws (1969) and adopted by the Vermont Supreme Court for application to contractual choice-of-law problems,[4] the forum court should apply the domestic rule of the state in which the decisive portion of the defendant's conduct had occurred. Marra v. Bushee, 317

F.Supp. 972 (D.C.1970). On the premise that a factual finding territorializing the defendant's conduct was a jurisdictional matter not within the province of the jury, the district court itself concluded "that the conduct which constituted the alienation occurred principally in Vermont and the applicable law is Vermont law." *Id.* at 978.

Although no Vermont decision has considered the choice-of-law rule applicable in an alienation of affection dispute involving multi-state conduct, the district court properly determined that Vermont would, in this instance, employ the law of the state in which the defendant's conduct primarily occurred. The traditional approach to the choice of law determined the applicable law by locating territorially the "place of the wrong," defined in the context of negligent torts as the place of the injury, Restatement, Conflict of Laws § 377 (1934); H. Goodrich, Conflict of Laws § 93 (3d ed. 1949), and in the context of intentional torts as the place of the wrongful conduct. Ehrenzweig, The Place of Acting in Intentional Multistate Torts, 36 Minn.L.Rev. 1, 5 (1951). With respect to the tortious interference with the marital relationship other jurisdictions have uniformly applied the law of the place of the defendant's conduct. See, e. g., Gordon v. Parker, 83 F.Supp. 40 (D.Mass.) aff'd on other grounds, 178 F.2d 888 (1 Cir. 1949); Albert v. McGrath, 107 U.S.App.D.C. 336, 278 F.2d 16 (1960); Conway v. Ogier, 115 Ohio App. 251, 184 N.E.2d 681 (1961). In Gordon v. Parker, *supra,* a Pennsylvania resident sued in the Massachusetts federal court for the alienation of his wife's affections by conduct occurring in the forum state. Defendant's motion for summary judgment, predicated upon a Pennsylvania

gan two years later and continued until during the summer of 1968, both spouses returned to the Granville, New York residence.

2. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Gore v. Northeast Airlines,

Inc., 373 F.2d 717, 720–721 (2 Cir. 1967); 1A Moore's Federal Practice ¶ 0.311 [1].

3. N.Y.Civil Rights Law, McKinney's Consol.Laws, c. 6, §§ 80-a–84.

4. Pioneer Credit Corp. v. Carden, 127 Vt. 229, 233, 245 A.2d 891, 893–94 (1968).

statute barring such action, was denied on the ground that the law of Massachusetts was applicable as the rule of the state in which the defendant's conduct had concededly occurred. Where the compensatory element dominant in negligent actions is supplanted by the punitive interest accompanying the state's attempt to control and deter injurious behavior, the defendant's conduct, and not the domicile of the aggrieved spouse, was considered determinative of the law to be employed. Restatement (Second), Conflict of Laws (1969) adopted this rationale in § 154—Interference With Marriage Relationship—which provides:

> "The local law of the state where the conduct complained of principally occurred determines the liability of one who interferes with a marriage relationship, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied." [5]

■■■ Territorial location of Esther Bushee's alluring conduct required a factual determination. Although the defendant did not deny that Allan Marra resided in her Vermont home, every other incident of alleged alienation about which there was testimony at trial occurred in New York. This factual determination was not, however, a jurisdictional consideration within the factfinding province of the trial court. Although the issue whether any of the wrongs alleged in plaintiff's complaint gave rise to tort liability turned upon resolution of the choice-of-law question, personal and subject matter jurisdiction had been independently established. See 5 Moore's Federal Practice ¶ 38.36 at 290–95. Because the plaintiff made a general demand for a jury trial, the de-

fendant was entitled to the jury's consideration of every issue properly triable to it. Fed.R.Civ.P. 38(a), (c); Dairy Queen, Inc. v. Wood, 369 U.S. 469, 472–473, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); 5 Moore's Federal Practice ¶ 38.42 at 330. One such issue was the situs of defendant's conduct, a factual determination upon which the choice of law turned. In Orr v. Sasseman, 239 F.2d 182 (5 Cir. 1956), the plaintiff husband and his wife, residents of Illinois, travelled to Georgia for the Christmas holidays. After plaintiff's return to Illinois, his wife remained for a period during with the jury found the defendant alienated the affections of plaintiff's wife. On appeal defendant contended that Illinois law, which limited recovery to actual damages, should have been applied because the evidence was insufficient to sustain a determination that alienation had occurred before plaintiff's wife returned to Illinois. Finding evidence sufficient to demonstrate the accrual of a claim arising in Georgia, the Court of Appeals expressly approved the trial court's instruction that if the loss of consortium occurred in Illinois, the verdict must be for the defendant; but if the claim arose in Georgia there could be a verdict for the plaintiff. *Id.* at 186.

Although there was sufficient evidence to support a finding that Esther Bushee's conduct occurred primarily in Vermont, a review of the extensive evidence of New York conduct makes clear that the court was not in a position to direct the jury to make such a determination. The defendant did not request a charge requiring the jury to make an initial determination territorializing the decisive portion of the allegedly tortious conduct. But a request for this instruction immediately after the trial court had reserved decision on defendant's motion to dismiss, which framed squarely

5. Statement (Second), Conflict of Laws § 154, comment b (1968) explains that this "rule furthers the choice-of-law [value] of application of the local law of the state of dominant interest * * * since the basic purpose of tort rules imposing liability for interference with a marriage relationship is not so much to compensate the plaintiff for his loss as to punish the defendant and to deter others from following his example."

the choice of law issue, would have been a duplication of procedural effort. Defendant is not, therefore, precluded from raising this error on appeal.

We have considered the other points raised by the appellant and conclude that they do not have sufficient substance to constitute reversible error. But because the defendant was entitled to the jury's finding of the facts which were determinative of the choice of law principles, the judgment of the district court is reversed and the case remanded for a new trial.

Rives, Circuit Judge, with whom Goldberg and Godbold, Circuit Judges, joined, dissented and filed opinion.