**Randy CHANCE et al., Plaintiffs,**

v.

**E. I. DU PONT DE NEMOURS & COM- PANY, INC., et al., Defendants.**

**No. 70 Civ. 1107.**

United States District Court,
E. D. New York.

Oct. 16, 1972.

---

16. Except with respect to Robert Matlack, of whose demise we are aware, see text accompanying note 11 *supra.*

Jerome Edelman, Brooklyn, N. Y., for plaintiffs; Melvin Block, Brooklyn, N. Y., of counsel.

Townley, Updike, Carter & Rodgers, New York City, for defendant E. I. Du Pont De Nemours & Co.

Cravath, Swaine & Moore, New York City, for defendant Hercules Powder Co., Inc.

Rogers, Hoge & Hills, New York City, for defendant Atlas Chemical Industries, Inc.

Martin, Bloom & Van DeWalle, Great Neck, N. Y., for defendant Austin Powder Co.

Littauer, Gordon, Ullman, Riseman & Ploscowe, New York City, for defendant Institute of Makers of Explosives.

Montfort, Healy, McGuire & Salley, Garden City, N. Y., for defendants American Cyanamid Co. and Olin Mathieson Chemical Corp.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

We are presented with a relatively novel question of procedure and conflict of laws: is a jury required to decide issues of fact upon which choice of law depends when that choice may determine decisions on motions to sever and to transfer? Our conclusion is that a jury is not needed.

This case arises out of injuries allegedly sustained by thirteen children in twelve unrelated blasting cap accidents, the injuries having occurred in the ten states where the children reside. Defendants are six manufacturers who comprise substantially the entire United States blasting cap industry, and their trade association, The Institute of Makers of Explosives (I.M.E.), an unincorporated association with its principal place of business in New York. The corporate defendants are citizens of Delaware, Maine, Virginia and Ohio, with principal places of business in Delaware, New Jersey, Connecticut and Ohio.

Claims for relief are based primarily upon New York based activities of I.M. E. to which the corporate defendants allegedly delegated responsibility for matters related to product safety. See Hall v. Du Pont De Nemours & Co., Inc., 345 F.Supp. 353 (E.D.N.Y.1972).

Defendants have moved for severance on the ground of improper joinder of parties and for transfer. 28 U.S.C. § 1404(a); Fed.R.Civ.P. 21. Both motions have been denied with leave to renew after resolution of the choice of law issue. Hall v. E. I. Du Pont De Nemours, 345 F.Supp. 353, 380–381, 386 (E.D.N.Y.1972).

New York choice of law principles are binding in a diversity case. Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under New York's conflict rules, unless there were substantial joint activities by the defendants in this state, contacts with the tort and the parties would be so slight as to cause the court to look to the law of the states where the explosions took place. See Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963); Tooker v. Lopez, 24 N.Y.2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394 (1969); Restatement (Second) of Conflict of Laws § 172 (1972).

If the applicable substantive liability law is that of the states where the injuries occurred rather than New York's, plaintiffs' claims will not involve a common question of law and severance and transfer may be warranted. See Hall v. E. I. Du Pont De Nemours, 345 F.Supp. 353, 380–381, 386 (E.D.N.Y.1972). We are thus faced with a preliminary issue of fact: how much of defendant's joint activities took place in New York.

A recent Second Circuit opinion, Marra v. Bushee, 447 F.2d 1282 (2d Cir. 1971), suggested that where the selection of appropriate substantive law requires a preliminary resolution of disputed questions of fact intertwined with the merits, the defendant is "entitled to the jury's finding of the facts which were determinative of the choice of law. . . ." Id. at 1285. See also Orr v. Sasseman, 239 F.2d 182, 196 (5th Cir. 1956), which approved a jury instruction on choice of law in a loss of consortium case but without citing authority or discussing reasons for the decision and with no objection to the judge's charge having been made below. Marra and Orr are the only cases we have found on the question. Cf. Marra v. Bushee, 317 F.Supp. 972, 978 n. 3 (D.

Vt.1970), rev'd, 447 F.2d 1282 (2d Cir. 1971).

Had the Court of Appeals had the benefit of full briefs and argument on the point in *Marra*, we doubt that it would have stated the jury favoring rule so broadly. For, in the circumstance of the case before us, it is apparent that the court and not a jury must decide the facts determinative of choice of law in disposing of these motions.

Neither the Restatement (Second) of Conflict of Laws (1972) nor the treatises speak to the question of whether judge or jury should make such a determination. *See, e. g.,* W. L. M. Reese & M. Rosenberg, Cases and Materials on Conflict of Laws (6th ed. 1971); R. Leflar, American Conflicts Law (1968); H. Goodrich & E. Scoles, Handbook of Conflict of Laws (4th ed. 1964); A. Ehrenzweig, A Treatise on the Conflict of Laws (1962); A. V. Dicey's Conflict of Laws (7th ed. 1958). One reason for this dearth of authority is that during the development of conflict of laws doctrine the ·choice of law rule was usually simple and the operative facts were usually undisputed so that there was no reason to resolve the problem.

■ Theory suggests that the facts predicate to a choice of law decision are generally for the judge rather than the jury. The question of what the substantive law is must normally be resolved by the judge because he must determine if plaintiff has established a prima facie case and he must tell the jury what the issues of fact are that they must decide as determined by the applicable law. *See, e. g.,* James, Jr., Sufficiency of the Evidence and Jury Control Devices Available Before Verdict, 47 Va.L.Rev. 218, 236–40 (1961); Michael, The Basic Rules of Pleading, 5 Record of N.Y. C.B.A. 175 (1950). A similar grasp of applicable law is required if the court is to rule intelligently on questions of relevancy. *See, e. g.,* Proposed Rules of Evidence for the United States Courts and Magistrates, Rules 401–403 (Rev.

draft 1971). This division of function between the judge and jury has been recognized since the beginning of the Republic. *See, e. g.,* J. Goebel, Jr., 1 History of the Supreme Court of the United States, 746, n. 108 (1971); J. Thayer, A Preliminary Treatise of the Law of Evidence at Common Law, 253–257.

A major departure from this fundamental concept existed with regard to treatment of foreign law. For purely historical reasons under English practice, the content of foreign law was a jury issue. This "earlier 'absurd common law rule' that required proof to the jury, was presumably due to a misunderstanding of questions of foreign law as questions of fact." A Ehrenzweig, A Treatise On The Conflict of Laws § 165 (1962). It was one of the outmoded "remnants of the 'fact' approach" to foreign law. R. B. Schlesinger, Comparative Law 70 (3d ed. 1970).

Jury determination of foreign law has proved to be unworkable. It has now been abolished in the United States by statutes and cases. *See, e. g.,* Fed.R. Civ.P. 44.1; Uniform Interstate and International Procedure Act § 4.03; Uniform Judicial Notice of Foreign Law Act § 4, adopted by legislation in twenty-eight jurisdictions, 9A U.L.A. 550 (1965); N.Y.C.P.L.R. § 4511; Mexican National R. Co. v. Slater, 115 F. 593, 608 (5th Cir. 1902), aff'd, 194 U.S. 120, 24 S.Ct. 581, 48 L.Ed. 900 (1904); Jansson v. Swedish American Line, 185 F.2d 212, 216 (1st Cir. 1950); First National City Bank v. Compania de Aguaceros, S. A., 398 F.2d 779, 782 (5th Cir. 1968); McCormick, Handbook of the Law of Evidence § 335 (2d ed. 1972); B. W. Jones, Evidence §§ 133–135 (5th ed. 1958); 9 J. Wigmore, Evidence § 2558 (3d ed. 1940); Miller, Federal Rule 44.1 and the Fact Approach to Determining Foreign Law: Death Knell for a Die Hard Doctrine, 65 Mich.L.Rev. 613 (1967). Content of law is now found as a "fact" by the court.

■ It has long been recognized that existential "facts" must often be decided by the court in order to decide which of alternative laws governs in a particular case. For example, in Hoyt v. Russell, 117 U.S. 401, 6 S.Ct. 881, 29 L.Ed. 914 (1886), the Supreme Court held that the trial court should have decided the distance of the subject matter in controversy from the seat of government where that was determinative of the applicability of a rule of law.

■ The circumstance that the facts found for the purpose of ruling on applicable law are intertwined with the ultimate issue on the merits does not require their resolution by the jury. In Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), for instance, the Court sustained a presumption with respect to importation of drugs in a criminal case by taking judicial notice of legislative facts not before the jury even though the issue of importation and knowledge of importation were jury questions.

The New York Court of Appeals, like most courts, has apparently assumed, without deciding, that the court, and not the jury, should decide the facts determining which jurisdiction's substantive law governs. See, e. g., Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963) (motion to dismiss); Auten v. Auten, 308 N.Y. 155, 164 n. 2, 124 N.E.2d 99, 103 n. 2 (1954) (motion for summary judgment). Seventh amendment considerations make this state approach to the jury problem persuasive only. See, e. g., Byrd v. Blue Ridge Rural Electric Corp., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). But what we believe to be the state approach is not inconsistent with federal requirements.

■■ Constitutional guarantees of a jury trial in actions at law in federal courts do not mandate a jury determination of every issue of fact. See generally 5 J. Moore, Federal Practice ¶ 38.38

[4]. Jurisdictional facts are illustrative of those which may properly be resolved by the court. See, e. g., Sinclair v. Spatocco, 452 F.2d 1213 (9th Cir. 1971) (existence of diversity of citizenship).

■ A federal court may resolve preliminary questions of fact, as for the purpose of ruling on the admissibility of evidence, even though the issue may be ultimately disputed on the merits. See, e. g., Proposed Rules of Evidence for the United States Courts and Magistrates, Rule 104(a)(b)(Rev.Draft 1971); Morgan, Functions of Judge and Jury in the Determination of Preliminary Questions of Fact, 43 Harv.L.Rev. 165 (1929); Maguire and Epstein, Preliminary Questions of Fact in Determining the Admissibility of Evidence, 40 Harv. L.Rev. 392 (1927). The court's determination of the preliminary factual question may be conclusive even though it involves resolution of an ultimate issue in a criminal case. See, e. g., Matz v. United States, 81 U.S.App.D.C. 326, 158 F.2d 190 (1946) (in bigamy prosecution judge determines whether first marriage was established for purpose of ruling on competency of second wife to testify). See also Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953); Maguire et al., Cases and Materials on Evidence, 937–938 (5th ed. 1965). That preliminary determination of fact is binding so far as admissibility is concerned even though there may be a contrary finding by the jury on the same factual issue, as in conspiracy cases. See, e. g., United States v. Calarco, 424 F.2d 657, 660 (2d Cir. 1970); United States v. Geaney, 417 F. 2d 1116, 1120 (2d Cir. 1969). As the Second Circuit recently emphasized:

> "The circumstance that in a conspiracy trial the preliminary issue on the admissibility of evidence coincides with the ultimate one of the defendant's guilt should not cause the trial judge to abdicate his traditional duty to decide those issues of fact which determine the applicability of a tech-

nical exclusionary rule." (Citations omitted.) United States v. Geaney, 417 F.2d 1116, 1120 (2d Cir. 1969).

■ Finally, practical considerations must be weighed. The nature of the inquiry which must be undertaken to resolve the choice of law question renders its determination by the jury unworkable in many instances. While under the old hard and fast choice of law rules the jury was probably as capable as the court of resolving the issue, adoption of the modern significant relationship test makes jury determination of all of the factors bearing upon choice of law impossible and its resolution of factual issues upon which some factors hinge a cumbersome, delay ridden, and potentially confusing and time wasting process.

The New York approach to choice of law in tort is substantially that of Restatement (Second) of Conflict of Laws (1972). *See* §§ 146, 172. Section 146 suggests the subtlety of the determination required. It provides:

"The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6."

and Section 6(2) states:

"[T]he factors relevant to the choice of the applicable law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied."

Certainly a jury is not equipped to engage in the kind of investigation and delicate balancing called for in section 6(2).

Marra v. Bushee does not compel a conclusion different from that required by principle, analogy, and sensible judicial administration. In *Marra,* the plaintiff sued for loss of consortium. There was evidence that the defendant had acted both in Vermont which recognized such a cause of action and in New York where it had been abolished. The District Court for the District of Vermont denied defendant's motion for a directed verdict and for a judgment notwithstanding the verdict. It held that the law of the place in which the decisive portion of defendant's activity took place would govern the choice of substantive law and found defendant's activity to have occurred principally in Vermont. Thus it applied Vermont law which gave plaintiff a cause of action. Marra v. Bushee, 317 F.Supp. 972, 978 (D.Vt.1970). The Court of Appeals reversed, holding that the issue of the territorial location of defendant's conduct should have been determined by the jury.

Unlike *Marra,* where the District Court made a choice of law determination in deciding the action on the merits, here that determination is being made only for the purpose of ruling upon the severance and transfer motions. During the course of the trial the court may reach different determinations on the facts and decide that a different rule of law applies—a not unusual circumstance in federal trials because of the ambiguity of federal pleadings.

In any event, a trial court is not justified in extending *Marra* beyond the facts of that case until the Court of Appeals has fully considered the matter. The question of the propriety of the trial judge making the choice-of-law determination was not adequately briefed in that case. *See* Briefs on Appeal, Marra

171

v. Bushee, 447 F.2d 1282 (2d Cir. 1971). Being unassisted by counsel, the court did not explore the implications and substantial difficulties of leaving choice of law issues to the jury.

 Since the jury will still determine the ultimate facts on the merits, preliminary judicial resolution of the factual issues relevant to choice of law does not impinge upon the right to jury trial. To extend jury trial to the choice of law issues would result in delay and confusion thereby impairing the right to jury trial on the merits—the overwhelming objective of the Seventh Amendment.

## CONCLUSION

The parties will arrange with the court for a preliminary determination of the decisive factual issues under New York State's conflicts rule. Submission of affidavits and other documentary proof is preferable to testimony at this stage, but the parties are free to supplement their proof by oral evidence if they feel it necessary to do so.

So ordered.